Robert LAUER, Plaintiff–Appellee,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellant.

No. 98–2773.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1999.

Decided March 2, 1999.

---

Frederick J. Daley (argued), Chicago, IL, for Plaintiff–Appellee.

Thomas P. Walsh, Office of the United States Attorney, Civil Division, Chicago, IL, Suzanne E. Lohmeyer Duman (argued), Social Security Administration, Office of the General Counsel, Region V, Chicago, IL, for Defendant–Appellant.

Before ESCHBACH, EASTERBROOK, and EVANS, Circuit Judges.

ESCHBACH, Circuit Judge.

The Commissioner of Social Security appeals the decision of the district court granting the plaintiff's Rule 59(e) motion and denying the Commissioner's Rule 59(e) motion in this Social Security disability insurance benefits case. The district court had initially granted summary judgment for the Commissioner, affirming the ALJ's finding that Lauer was not disabled during the 18–month period from 1991 to 1993 in which he did not work. However, the district court agreed

with Lauer's argument that a 1996 Social Security Ruling mandated that he be found disabled. In response to the Commissioner's Rule 59(e) motion, the district court recognized that this argument was flawed, but refused to restore the judgment in the Commissioner's favor. Because the district court's reading of the Social Security Ruling is in tension with the language of the ruling, and the district court's decision improperly decided an issue committed to the Commissioner, we vacate the decision of the district court and remand the case to the district court with instructions for that court to remand to the Commissioner.

## I. Facts

### A. Lauer's medical and work history

Robert Lauer is 47 years old and has had a history of back pain dating to a 1983 work injury. In September 1991, Lauer worked at a car wash as an assistant manager. He quit when he re-injured his back while trying to move a safe.

An MRI exam in October 1991 revealed that Lauer had a herniated disk. Another exam in December 1991 found that Lauer suffered from an "acute left L5 radiculopathy." On December 30, Lauer underwent spinal surgery. Immediately after the surgery, Lauer reported relief from pain, but the pain returned soon after. Examinations in early and mid-January suggested stenosis (narrowing) of the spinal canal, and epidural lipomatosis "with displacement but not compression of the dural sac and with two areas of calcification at the level of T5 and T6."

At a physical therapy session in February 1992, the therapist noted that Lauer moved around guardedly, and that Lauer reported pain in his buttocks and left leg. At another session later that month, the therapist noted that Lauer was making poor progress and noted that Lauer was having spasms and complaining of increased pain. In May 1992, for reasons unrelated to his back pain, Lauer had major abdominal surgery. Doctors performed an exploratory laparotomy, removed Lauer's appendix, removed a bowel obstruction, and inserted a catheter. After recovering from the surgery, in August 1992 Lauer vacationed in Mexico, and on returning told his physician that while in Mexico he felt better than he had in years.

In early September 1992, therapists gave Lauer a work capacity evaluation. Despite back spasms, Lauer was able to complete all tests, though the spasms limited his ability to perform weighted tests. The therapists found Lauer was capable of light work. After the evaluation, Lauer reported increased pain. During September and October, Lauer received three lumbar epidural steroid injections to try to control the pain, with limited success. Dr. Magee, who administered the tests, found that Lauer "still remained quite symptomatic and dysfunctional" at the end of September, noting that Lauer had difficulty walking due to pain on his left side that radiated down his left leg.

In May and June 1993, Lauer participated in a rehabilitation program, and in July 1993, Lauer began a full-time job—his first since 1991—as a security guard. The job required fourteen miles of walking a day. The following month, Lauer transferred to a less demanding security job that allowed him to sit 70% of the time. He was still working in that job at the time of his administrative hearing in August 1994.

### B. Proceedings

At Lauer's administrative hearing, the ALJ found that the only time period during which Lauer could qualify for benefits was between September 1991 and July 1993. The ALJ concluded that while Lauer did have a severe condition, he did not have an impairment listed in the applicable regulations. She determined that after August 1992, Lauer retained a functional capacity to "perform the full range of sedentary work with a sit/stand option, that does not require him to stoop or crouch and does not require him to work in extremely cold temperatures." She found that the Chicago area offered a significant number of jobs that Lauer could perform, and thus found that Lauer had not been disabled.

Lauer then sought judicial review in the district court pursuant to 42 U.S.C. § 405. On the parties' cross-motions for summary judgment, the court granted summary judg-

ment to the Commissioner. Lauer then filed a Rule 59(e) motion which argued that Social Security Ruling (SSR) 96–9p requires a finding of disability for a claimant who cannot stoop. The district court agreed with Lauer's interpretation of the regulation and granted the motion, finding Lauer entitled to benefits for the entire period that Lauer was out of work, from September 1991 to July 1993. The Commissioner then filed his own Rule 59(e) motion, contending that the district court had erred in interpreting SSR 96–9p, because the ruling stated that in Lauer's situation, a finding of disability would "usually" apply. The court denied the Commissioner's motion. The court recognized that "SSR 96–9p states that a finding of disabled would usually apply. Here, Mr. Lauer fits in to the 'usually' category. This is supported by his medical records." The Commissioner appealed from both Rule 59 rulings.

## II. Analysis

■ The Commissioner's notice of appeal refers only to the Rule 59 motions. This court generally reviews a district court's decision on a . Rule 59 motion for abuse of discretion. *Bradley v. Work*, 154 F.3d 704, 708 (7th Cir.1998). This court may also review the merits of the underlying action because the decision on a Rule 59 motion is a final judgment allowing the court to consider all non-moot issues in the case. *See Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Kunik v. Racine County*, 106 F.3d 168, 173 (7th Cir.1997).

■ In Social Security disability benefits cases, this court generally reviews the district court's decision de novo and reviews the ALJ's decision to determine if it is supported by substantial evidence. *See Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir.1998).

### A. Issues raised by the Rule 59 motions
#### 1. SSR 96–9p

■ The district court granted Lauer's Rule 59(e) motion on the basis of SSR 96–9p, Determining Capability To Do Other Work— Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 61 Fed.Reg. 34478 (1996). SSRs are interpretive rules intended to offer guidance

to agency adjudicators. *See Lauer v. Bowen*, 818 F.2d 636, 639–40 (7th Cir.1987). While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs "binding on all components of the Social Security Administration." *See* 20 C.F.R. 402.35(b)(1). The parties do not dispute the application of SSR 96–9p to this case, even though the SSR was not issued until after Lauer's administrative hearing. *See Pope v. Shalala*, 998 F.2d 473, 483–84 (7th Cir.1993) (applying clarifying regulations retroactively).

When ruling on Lauer's Rule 59(e) motion, the district court found that SSR 96–9p "mandates a finding of disabled for claimants who are limited to sedentary work who cannot do any stooping regardless of the testimony of a vocational expert." The district court relied on the following language in the SSR:

> An ability to stoop occasionally; i.e., from very little up to one third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

SSR 96–9p, 61 Fed.Reg. at 34482.

On its face, this language does not compel a finding of disability in any of the situations it describes. Rather, it instructs adjudicators to consult with vocational resources when confronted with a claimant who is "limited to less than occasional stooping." Lauer argues that the recommendation to consult with a vocational expert applies only to cases when there is a partial ability to stoop, but this interpretation is inconsistent with the language of the ruling. The language "less than occasional" is an upper limit. It includes both an ability to stoop rarely and no ability to stoop at all.

Lauer argues that the SSR's statement that an inability to stoop will "significantly erode the unskilled sedentary occupational base" constitutes administrative notice that a claimant with that limitation will not be capable of performing a significant number of jobs in the national economy. Lauer argues that similar language in the Social Security regulations has the same meaning and points to 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(h), which states that "[s]ince the inability to perform jobs requiring bilateral manual dexterity significantly compromises the only range of work for which the individual is otherwise qualified (i.e. sedentary), a finding of disabled would be appropriate." Lauer asserts that this language directs a finding of disability, but the only caselaw on point holds that this language is not a mandate, and that "appropriate" does not mean "required." *See Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir.1990). There is no basis to assert that SSR 96–9p requires a finding of disability in cases where a claimant is unable to stoop.

### 2. The district court's finding that Lauer presents a "usual" case

■ On the Commissioner's Rule 59(e) motion, the district court appeared to recognize that construing the SSR to require a finding of disability in Lauer's case was an error, but found that Lauer's medical history made his a "usual" case under the SSR, thus justifying a finding of disability. The Commissioner argues that district court overstepped its authority by finding that Lauer's was a "usual" case.

The Commissioner correctly notes that the district court is not allowed to "substitute [its] judgment for that of the ALJ." See *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir.1997). Whether a claimant's inability to stoop is a usual or unusual case is a factbound determination best made by the Commissioner. The parties agree that the importance of Lauer's ability to stoop was not clear at the time of the agency hearing. If the district court believed that the SSR suggested that the result of the agency adjudication should have been different, the court should have allowed the ALJ to consider the impact

of the SSR. *See Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir.1993). We believe that the Commissioner should have the opportunity to consider the impact of the SSR.

### B. The Underlying ALJ Decision

■ Lauer suggests as an alternate ground for affirming the district court's rulings that the ALJ's decision is not supported by substantial evidence. Lauer raises five issues in support of this position, none of which would justify affirming the district court's decision. But we believe that one issue merits discussion in light of our decision to remand: that the ALJ failed to view the entire record when determining whether Lauer was disabled.

The ALJ determined that as of August 1992, Lauer retained a capacity to perform sedentary work with some restrictions. She chose this date based on a September 8, 1992, report which stated that Lauer was able to perform light work, and on Lauer's statement to his doctor in September 1992 that in August he had taken a trip to Mexico, which required a three-and-a-half-hour-long flight, and while there, he felt the best he had in years. The August 1992 date is crucial because Lauer ceased working on September 26, 1991. Lauer must show that he was incapacitated for at least a 12–month period to qualify for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A). If Lauer's date of attaining a functional capacity to do sedentary work is delayed by only a few weeks, he would meet the statutory time period required to support a finding of disabled. The ALJ's ruling does not discuss evidence from after September 8 suggesting that Lauer may have been unable to work until some point after October 1992.

Lauer's September 8, 1992, functional capacity evaluation noted his ability to do light work, but also indicated that he had back spasms with most weighted activities. On September 23, 1992, a physical therapist commented that Lauer was unable to be in any one position for more than "20–30 minutes" because of back and hip pain, and that he was unable to drive. She also commented that "standing activities will probably aggravate lower back & hip area." The Commis-

sioner dismisses the therapist's report because it is not medical evidence, citing 20 C.F.R. § 404.1513(a). However, another provision in this same regulation notes that reports from non-physicians are helpful when determining functional capacity. *See* 20 C.F.R. § 404.1513(e). Moreover, the physical therapist's comments are consistent with a contemporaneous report by Lauer's treating physician, who noted on September 25 that Lauer "obviously needs physical therapy" and prescribed epidural steroid injections to control Lauer's pain. Lauer underwent a series of three injections in late September and early October. The doctor who administered the injections noted on October 10 that Lauer was "quite symptomatic and dysfunctional ... [and] unable to maintain any standard level of function due to his symptoms."

Lauer's experiences in September and October suggest that Lauer may have had trouble working on a sustained and continuous basis full time in the fall of 1992, even though during August he had been able to do some household chores and was able to tolerate a several-hour plane flight to Mexico. An ALJ must consider all of the evidence and discuss significant evidence contrary to her ruling. *See Diaz v. Chater,* 55 F.3d 300, 308 (7th Cir.1995); *Green v. Shalala,* 51 F.3d 96, 101 (7th Cir.1995). The ALJ should consider this evidence on remand.

### III. Conclusion

The district court improperly directed a finding that Lauer was disabled. We remand this case with instructions for the district court to remand the case back to the Commissioner so that the agency can determine the effect of the SSR and of the evidence of Lauer's continued impairment after September 8, 1992.

VACATED AND REMANDED WITH INSTRUCTIONS.