Lisa WILLIAMS, Plaintiff–Appellant,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellee.

No. 98–2724.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1999.

Decided June 16, 1999.

Ross R. Kinney (argued), Waukesha, WI, for Plaintiff–Appellant.

Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, Edward P. Studzinski (argued), Mary Thorson, Social Security Administration, Office of the General Counsel, Region V, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

The plaintiff, Lisa Williams, appeals from the magistrate judge's finding that she was properly denied supplemental security income payments by the defendant, the Commissioner of Social Security ("the Commissioner"). Although she presents a sympathetic case, the law is on the Commissioner's side, and thus we affirm the court below's decision.[1]

### Facts

In 1991, when Lisa Williams was twelve years old, her mother applied for childhood disability benefits on Lisa's behalf under the supplemental security income program ("SSI").[2] These payments are authorized by the Social Security Act, 42 U.S.C. § 1382, for individuals who, because of physical, mental, or emotional impair-

---

1. We echo Magistrate Judge Goodstein's commendation of the plaintiff's counsel, Ross R. Kinney, for tirelessly representing his client throughout these proceedings on a pro bono basis.

2. We refer to Lisa Williams as Lisa to avoid confusion with her mother, Ms. Williams.

ments, are unable to engage in substantial gainful activity.

From early childhood, Lisa has required significant remedial educational and behavioral assistance. In the first three years of her life, she was enrolled in a variety of programs to assist her speech-language development and improve her auditory memory skills. At age three, her intellectual functioning was tested at the low average range. School psychological reports from the mid–1980's, when Lisa was in elementary school indicated that she experienced insecurity, low self-esteem and confusion. Although she showed some improvement in fifth and six grades and was able to function in mainstream classes, a multi-disciplinary evaluation conducted when Lisa was in eighth grade indicated that her overall academic skills were at the fifth grade level. Her eighth grade report card was riddled with poor grades and numerous absences. Lisa's home life was also troubled—the record indicates that she was abused (it does not specify by whom), and that her mother had a lifelong substance abuse problem. Additionally, Lisa fell from a shopping cart at two months, fractured her jaw at five years old, and fell from a roof when she was twelve.

Lisa has been subjected to a battery of psychological tests which confirm that her I.Q. is borderline, and that she has difficulty dealing with her mother and her peers. Neither of the two doctors who examined her in connection with the benefits claim specifically diagnosed her with identifiable conduct disorders. The psychologist who examined Lisa at the behest of her attorney found Lisa more limited than the government's psychologist, but these two basic assessments—about intelligence and conduct—were not disputed.

An Administrative Law Judge ("ALJ") reviewed Lisa's claim, and made specific findings based on applicable standards in 1994, when Lisa was 14. In particular, the ALJ concluded that Lisa is a child of average intelligence with poor motivation, and that her problems stem from external circumstances, rather than her impairments. The ALJ also found that Lisa had moderately limited cognitive functions, no evidence of motor development limitation, and less than moderate limitations in her social and behavioral capacities. On these grounds, the ALJ denied Lisa's application for benefits. The Social Security Appeals Council declined to review the ALJ's ruling. Having exhausted her administrative remedies, Lisa appealed to the federal courts, and Magistrate Judge Goodstein affirmed the ALJ's decision. This appeal followed.

## Analysis

### Standard of Review

■ In the court below, the plaintiff challenged both the regulations the Commissioner enacted to administer the SSI program under § 1382 and the ALJ's decision on its merits. The magistrate judge found that the regulations were consistent with the regulation, and held that the ALJ did not err in denying Lisa benefits. We review these conclusions de novo. *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir.1999). However, we, like the magistrate judge, must affirm the ALJ's decision if it is supported by substantial evidence in the record. *Id.*

### A.

■ At the time the ALJ rendered his decision in 1996, a child was considered disabled, and thus entitled to SSI benefits, if "[s]he suffer[ed] [from] any medically determinable physical or mental impairment ... of comparable severity" to an impairment that would disable an adult. 42 U.S.C. § 1382c(a)(3)(A) (1996).[3] In de-

---

**3.** We use the past tense because during the pendency of this case, Congress amended § 1382, and changed the standard to be used in determining whether a child is disabled. 42 U.S.C. § 1382c(a)(3)(C) (1997). The com-

parable severity standard was jettisoned; a child is now disabled if she has a medically determinable "physical or mental impairment, which results in marked or severe functional limitations, and which can be expected

termining whether such an impairment existed, the Commissioner used a four-part test: 1) whether the child was performing substantial gainful activity; 2) if not, whether she had an impairment or combination of impairments that were severe; 3) if yes, whether the impairment met or equaled any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; and 4) if not, whether the child's impairment was nonetheless of comparable severity to an impairment which would disable an adult. 20 C.F.R. § 416.924(b) (1996). Step four in this process was referred to as the individualized functional assessment ("IFA").[4] The only time an IFA was necessary was when, as here, an ALJ answered "no" to the first and third parts of the test, and "yes" to the second.

■ The plaintiff argues that the regulations the Commissioner promulgated and the ALJ used in his IFA to determine whether Lisa's disability was comparable to an adult's are invalid because they were contrary to the controlling statutory provisions. Because the Commissioner has rulemaking authority, these regulations are entitled to *Chevron* deference. *Sullivan v. Zebley*, 493 U.S. 521, 528, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

The alleged defect in the Commissioner's regulations is that IFAs did not consider the vocational skills of children ages 12 to 16. At her administrative hearing, the plaintiff presented two experts who testified that she had dim job prospects because of her limitations, and thus, she should be entitled to SSI benefits. The ALJ largely excluded this testimony, because the controlling regulations only provided for vocational analysis for adults, *see* 20 C.F.R. § 416.920(e)–(f) (Commissioner

must determine whether adult claimant can currently perform any jobs she previously held or whether any other work exists in the national economy given claimant's age, education, and work experience) and for children 16 to 18, *see* 20 C.F.R. § 416.924d(j)(2)(3) (1995) (Commissioner considers some school activities as evidence of claimant's ability to function in a job setting, and if applicable considers current or past work history). According to the plaintiff, the failure to perform a vocational analysis on children under sixteen violates the Supreme Court's holding in *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

In *Zebley*, the Supreme Court was faced with the question of whether or not the Secretary of Health and Human Services ("the Secretary")[5] was carrying out § 1382's mandate that a child was entitled to benefits if "he suffers from any ... impairment of comparable severity to one that would render an adult 'unable to engage in any substantial gainful activity.'" *Id.* at 529, 110 S.Ct. 885 (quoting 42 U.S.C. § 1382(c)(a)(3)(A) (1982)). At that time, children were only entitled to benefits if their impairment met or was medically equal to a listed impairment. This was in contrast to adults, who, even if their impairment did not meet the same standard, could still receive benefits if they could not perform any work or other gainful activity. *Id.*

The plaintiff, Zebley, argued that it was inconsistent with the statute's plain meaning and intent that children who suffered from an impairment identical or similar to one which would render an adult incapable of engaging in gainful activity could be

---

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). This new language is more restrictive than the old, and any claim denied under the old standard would be denied under the new. Thus, a finding that Lisa was properly denied benefits under the preamendment standards is dispositive. *See Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

4. Under the new regulations, individualized functional assessments no longer need be performed for child claimants. *Nelson*, 131 F.3d at 1237 n. 5; 62 *Fed.Reg.* 6408, 6409 (Feb. 11, 1997).

5. At the time, the Secretary of Health and Human Services was responsible for administering the SSI program instead of the Commissioner.

excluded from receiving benefits. *Id.* at 536, 110 S.Ct. 885. The Secretary's response was that because children generally do not work, the "listings-only" approach was the only practical way of determining whether child and adult disabilities were comparable. *Id.* The Supreme Court rejected the Secretary's reasoning, holding that:

> The fact that a *vocational analysis is inapplicable to children* does not mean that a functional analysis cannot be applied to them. An inquiry into the impact of an impairment on the normal daily activities of a child of the claimant's age—speaking, walking, washing, dressing and feeding oneself, going to school, playing, etc.—is in our view, no more amorphous or unmanageable than an inquiry into the impact of an adult's impairment on his ability to perform 'any other kind of substantial gainful work which exists in the national economy.'

*Id.* at 539–40, 110 S.Ct. 885 (citations omitted) (emphasis added). Thus, while *Zebley* indisputably required the government to delve deeper into an individual child's disabilities, on its face it did not proscriptively mandate that the government perform a vocational work-up of every child claimant. Thus, we reject the plaintiff's argument that because the statute required similar treatment of children and adults, the Commissioner had to adopt identical (or nearly identical) regulations for children and adults. Not even the case relied on by the plaintiff supports this argument. *Tyrrell v. Sullivan*, 972 F.2d 252, 256 (8th Cir. 1992) ("the [Commissioner] must adopt comparable regulations for children and adults ... [including] an analogous functional analysis for children where the standard vocational analysis for adults is inapplicable to children and fails to achieve a comparable result.").

To meet *Zebley*'s mandate, the Social Security Administration revised its child-disability regulations, and created IFAs for children that were comparable, although not identical, to the tests for adults. As noted, 20 C.F.R. § 416.924d(j)(2) added a vocational element for children 16 to 18 years old. However, for children 12 to 16, the regulations omitted work-related aptitude, no doubt taking into account the Supreme Court's statement in *Zebley* that "a vocational analysis is inapplicable to children." 493 U.S. at 539, 110 S.Ct. 885. Because *Zebley*—and by implication § 1382—did not compel vocational analysis for children, the absence of such an analysis for 12 to 16 year olds is not "manifestly contrary to the statute," and thus, unless the regulations are arbitrary and capricious, we will uphold them. See *Zebley*, 493 U.S. at 528, 110 S.Ct. 885 (quoting *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

■ Under the IFA for a child between 12 and 16 years old, the claimant was to be assessed in six different "domains": 1) cognitive function, 2) communicative function, 3) motor function, 4) social function, 5) personal/behavioral function and 6) concentration, persistence and pace. 20 C.F.R. § 416.924d(I) (1995). Instead of vocational activity, these domain assessments were used to determine a school-age child's "ability to grow, develop, or mature physically, mentally, or emotionally and thus to engage in age-appropriate activities of daily living in self-care, play and recreation." 20 C.F.R. § 416.924(a)(2).

■ The plaintiff argues that even though she was 14 years old at the time of the hearing, this type of assessment was not the best one for her. Instead, she contends that the vocational analysis reserved for 16 to 18 year olds would have fit her needs better. Even assuming this is true, such a fact would not necessarily make the entire system of regulations arbitrary and capricious. A decision is only arbitrary and capricious when "the agency has relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of a problem, offered a decision that runs counter to the evidence that is before it, or is so implausible that it could not be ascribed

to ... the product of agency expertise." *Mahler v. United States Forest Service*, 128 F.3d 578, 582 (7th Cir.1997) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

Numerous reasons support the Commissioner's decision to differentiate between younger and older claimants. As the magistrate judge noted, many states have minimum ages for employment. Children between 14 and 16 may not work in many industries, and ordinarily, they may only work if the times and conditions of their employment do not interfere with their schooling. See Darlene Adkins, *Health, Education, Labor and the Convention on the Rights of the Child*, 5 GEO. J. ON FIGHTING POVERTY, 295, 296 (1998). For instance, Lisa's home state, Wisconsin, establishes 14 as the minimum age for most employment positions, § 103.67(2) Wis. Stats., and lifts many restrictions when a child reaches 16 years old. Thus, an older child is much more likely to have a work history than a younger child.

These rules were also a recognition by the Commissioner that the evaluation of children at different ages must reflect developmental differences consistent with the aging and maturation process, and thus distinctions had to be drawn. See 58 *Fed. Reg.* 47532, 47556 (Sept. 9, 1993) (classifications made in reference to "a child's ability to initiate age-appropriate social exchanges and friendships and to respond appropriately to social environments ... with increasingly complex interpersonal behaviors.") As the Commissioner observed, the "approach to older adolescents, age 16 ... [to] 18, focuses on the critical transition that adolescents experience as they approach young adulthood.... The notion of comparable severity to an adult ... is more work-related in this age category than in the younger age categories." 56 *Fed.Reg.* 5534 (Feb. 1, 1991).

Additionally, the Commissioner addressed the question of whether older children were receiving a benefit based on the inclusion of the vocational element in their IFAs, as this plaintiff believes:

> The childhood age categories function as descriptive devices ... they are a convenient way for [the Commissioner] to describe functioning and the kinds of evidence we [need to assess] children of different ages.... Moreover, all of the guidelines ... regarding what may constitute a disability in different age categories are set at the same level of severity; they merely use different descriptors to describe age-appropriate assessments of disability. Therefore, there is no disadvantage (or advantage) to a child's being "assigned" to one age category or another.

58 *Fed.Reg.* at 5547.[6]

Based on the administrative record, it is clear that for the SSI program to run, children of different ages need to be assessed in different, and age-appropriate ways. The Commissioner's regulations reasonably acknowledged that the evaluation of children must reflect their developmental differences at the different stages of their maturation process. Thus, we conclude that the regulations were not arbitrary and capricious.

**B.**

▪ The plaintiff's second claim is that the ALJ's decision was substantively improper, and that she should have been awarded SSI benefits. This is a difficult argument to sustain; an ALJ's findings are conclusive when supported by substantial evidence. *Maggard v. Apfel*, 167 F.3d 376, 378. Substantial evidence is defined as " 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). While we review

---

**6.** During the notice and comment period, the suggestion was made that the vocational standard was actually unfair, because it held older children to a higher standard, although the Commissioner rejected this claim. See 58 *Fed.Reg.* at 47541.

the whole administrative record, "we do not substitute our judgment for that of the Commissioner by reconsidering facts, re-weighing evidence, resolving conflicts in evidence or deciding questions of credibility." *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir.1997).

■ Much of Lisa's argument is grounded in the fact that she proffered a number of witnesses who spoke of her diminished vocational prospects. At the administrative hearing, the plaintiff presented testimony from a psychologist and a vocational expert indicating that she will be unable to obtain work at age 18. According to Lisa, had the ALJ taken this testimony into account, he would have found her disabled, and thus entitled to benefits. She contends that the failure to consider these opinions was erroneous under *Zebley* and *Reichenbach v. Heckler*, 808 F.2d 309 (4th Cir.1985). However, as we have already noted, *Zebley* has no such requirement.

In *Reichenbach*, the court found that the ALJ erroneously failed to take into account the "combined effect of [the claimant's] impairments on his ability to work." *Id.* at 309. Taken out of context, this language seems to provide support for the plaintiff here, however, closer inspection shows that *Reichenbach* is inapposite. The *Reichenbach* plaintiff was 51 years old, and thus the adult regulations, which expressly take into account vocational capacity, applied to him. *Id.* at 310. Moreover, *Reichenbach* focused on whether the claimant's disabilities were sufficiently severe to get to a vocational analysis, and not on the type of evidence an ALJ must consider. *Id.*[7]

Also, to accept the testimony of Lisa's experts would have required the ALJ to expressly disregard the Commissioner's position on use of predictive evidence. The plaintiff's experts testified that when Lisa became 18, she would have difficulty obtaining employment because of the risk that her disabilities would make it very hard for her to function in a work environment. However, as the Commissioner has noted, its role was to award benefits to children suffering an impairment of comparable severity to that of an adult who could not work at the particular time the child was diagnosed, not to look into the future. In that capacity, the Commissioner observed: "[p]redicting future disability based on risks goes beyond comparability to the adult rules .... it is not reliably predictive, provides no basis for future comparison for determining continuing disability, and might require us ... to make ... judgments that are far beyond our purview." 58 *Fed.Reg.* at 47575.

Other than the exclusion of vocational evidence, the plaintiff makes no serious challenge to the sufficiency of the evidence supporting the ALJ's conclusion that Lisa was not disabled. The ALJ analyzed the evidence before him, including the testimony of Lisa's doctor, Dr. Nutall, and the government's doctor, Dr. Manos. As the ALJ noted, the doctors were in agreement in their diagnostic findings, although their conclusions differed. The ALJ also considered test results, comments from Lisa's teachers, her parents, and from counselors and made extensive findings about Lisa's capabilities in each of the six "domains." He found no impairments in Lisa's communicative or motor functions, and that her cognitive function fell within borderline classifications. While she had difficulty with arithmetic, in sixth and seventh grade, she was mostly in mainstream

---

**7.** For similar reasons, plaintiff's attempt to rely on *Cockerham v. Sullivan*, 895 F.2d 492 (8th Cir.1990) is also unsuccessful. In *Cockerham*, the court held that the plaintiff "whose alleged impairment is an IQ of 70–79 ... has alleged a severe impairment and may be considered disabled after consideration of vocational factors." *Id.* at 496. The plaintiff argues that because her IQ is in the same range, vocational factors should be considered in her case as well. However, *Cockerham* required a vocational analysis because the claimant was an adult, not because the impairment was severe. *Id.* Here, the appropriate response to a finding that Lisa had a severe disability was an IFA for a 14 year old, which as noted above, has no vocational component.

classes. As to the social, personal/behavioral functions and concentration, persistence and pace, the ALJ found some problems, but ascribed most of these to Lisa's home life and personal circumstances, rather than to neuropsychological or other dysfunctions as Dr. Nutall asserted existed.

Despite the plaintiff's protestations, the ALJ was not obliged to accept Dr. Nutall's conclusions, so long as these opinions were considered, and there was a reason they were rejected. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992). As noted above, the ALJ had much to buttress his conclusions—the report of another doctor, the testimony of teachers that Lisa could be agreeable and sociable when she chose and that Lisa made good friends, and Lisa's own testimony and demeanor at the hearing. Other evidence suggested that social pathologies caused Lisa's troubles— constant changing of schools, social and economic circumstances and familial problems. Moreover, even Dr. Nutall hedged a bit on her conclusions, conceding that the diagnostic test results and her conclusions were at some variance. She also acknowledged that motivational and other problems may have played a role in Lisa's low academic performance. In sum, there was ample reason for the ALJ to reject the plaintiff's arguments that she was entitled to disability benefits.

### Conclusion

For the forgoing reasons, the magistrate judge's decision that the Commissioner's regulations were not arbitrary and capricious, and that the ALJ was within his discretion to deny the plaintiff SSI benefits is AFFIRMED.