**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-30554

ALODIE CARNAHAN,

Plaintiff-Appellant,

versus

KENNETH S. APFEL, US COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

Defendant-Appellee.

Appeal from the United States District Court
For the Western District of Louisiana, Lake Charles
(98-CV-1301)

January 8, 2001

Before REAVLEY, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Alodie Carnahan appeals the district court's grant of summary judgment in favor of the Commissioner, which affirmed the denial of Social Security benefits. We affirm.

I. Facts and Procedural History

Alodie Carnahan, born March 31, 1949, completed the tenth

---

[*]Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

grade and earned a general equivalency diploma. She has previously worked as a construction worker and a convenience store assistant manager. In May of 1991, while working in the convenience store, she suffered a work-related back injury. Carnahan then began treatment under several different doctors. In November of 1991, she underwent "nerve conduction studies," which showed the presence of mild L-5 irritation on the left side, but otherwise normal results. In January of 1992, Dr. R. Dale Bernauer, one of Carnahan's orthopedic surgeons, diagnosed lumbar spine strain and facet arthritis. He concluded that she could not engage in light duty due to pain and would need surgery, which Carnahan never had.

Dr. Kevin Gorin, Carnahan's second orthopedic specialist, treated her for the longest period of time. In May of 1993, Dr. Gorin noted that Carnahan had more pain than should be expected and later suggested that she undergo a pain and personality evaluation. In September of 1993, the evaluation showed that she seemed willing to cope with her pain and could benefit from learning pain management skills. Dr. Gorin continued to treat Carnahan throughout 1993, giving her peripheral injections. In January of 1994, he reported that Carnahan's problems were beginning to improve, and he recommended a home stretching program. In March of 1994, Carnahan indicated to Dr. Gorin that she felt the best that she had in years and had cut back on pain medication. In June of that year, Dr. Gorin noted that although Carnahan continued to suffer from facet arthropathy, she had made excellent progress and

could possibly return to light work. In November of 1994, he found improvement in both posture and body mechanics despite Carnahan's complaints of leg and foot pain. Throughout 1995, Dr. Gorin noted facet arthropathy and left sacroiliac joint dysfunction, but also gradual improvement. In 1996, he completed a Residual Functional Capacity form in which he indicated that she could stand and/or walk for a total of two hours, continuously for one-half hour, and that she could sit for a total of six hours, continuously for two hours.

In October of 1994, Dr. John Humphries, the Commissioner's orthopedic specialist, examined Carnahan. At the time, she had been wearing a corset prescribed by Dr. Gorin, which reportedly gave her some relief. Dr. Humphries found tenderness at the lower back, and Carnahan complained of low back pain when he lifted her right leg in the supine position. The testing of the left leg in that position was unreliable because during the test she could only elevate the leg half way, whereas Dr. Humphries noted that Carnahan had spontaneously lifted the leg fully in the seated position earlier. His report noted moderate degenerative disk disease and substantial facet arthropathy, but no hard neurological abnormalities upon physical examination. Dr. Humphries concluded that Carnahan "should be able to stand, sit or walk although she may need to alternate intervals" and could perform light or even medium work with the proper liberties.

Carnahan applied for benefits on July 27, 1994, but the

3

application was denied. After reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on March 21, 1996. Carnahan testified that she had a deep pain in her hip and a throbbing pain in her back. She said that her legs gave out, the most recent time being in 1995, and that she was on pain medication. She testified that she did little walking, squirmed while sitting so she could not sit continuously for two hours, and found standing the most difficult position. Carnahan's daughter testified that her mother was usually in her recliner or bed.

On May 8, 1996, the ALJ denied benefits. Although she concluded that Carnahan was unable to return to her former employment, the ALJ found that she could make an adjustment to other sedentary work. The ALJ determined that Carnahan suffered from degenerative disc disease, facet arthropathy, and sacroiliac joint dysfunction, but that evidence supported a finding that she was not disabled. Carnahan filed suit in the district court. The district court found that the Commissioner's decision was supported by substantial evidence and consistent with legal standards.

## II. Standard of Review

"We review the Secretary's decision only to determine whether it is supported by substantial evidence on the record as a whole and whether the Secretary applied the proper legal standard." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citing 42 U.S.C. §§ 405(g), 1383 (c)(3)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to

4

support a conclusion.' In applying the substantial evidence standard, we scrutinize the record to determine whether such evidence is present. We may not reweigh the evidence, try the issues de novo, or substitute our judgment for that of the Secretary." Id. (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)) (in turn citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2000). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). An individual is "under a disability, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ." Id. § 423(d)(2)(A).

### III. Analysis

On appeal, Carnahan argues that the ALJ erred by relying solely on the Medical Vocational Guidelines. First, she argues

5

that her pain constitutes a significant nonexertional factor that prohibits reliance on the guidelines. Second, she argues that there was not substantial evidence to support a finding of not disabled. Finally, she argues that the ALJ erred by not consulting a vocational expert because she is limited by a need to alternate between sitting and standing.

A. Pain

Carnahan contends that the ALJ's conclusion that she had no "significant nonexertional limitations which narrow the range of work she can perform" was erroneous and not supported by substantial evidence. She claims that her pain was a nonexertional limitation, pointing to evidence that she needed to alternate sitting and standing, to walk continuously only for one-half hour, to never climb or crawl due to pain, and to limit reaching because of pain.

Nonexertional limitations "affect only . . . [the] ability to meet the demands of jobs other than strength demands." 20 C.F.R. § 416.969a (2000). "Pain may constitute a nonexertional factor that can limit the range of jobs a claimant can perform." Scott v. Shalala, 30 F.3d 33, 35 (5th Cir. 1994). However, there should be "clinical or laboratory diagnostic techniques which show the existence of a medical impairment which could reasonably be expected to produce the pain alleged." Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990). Pain is disabling when it is "constant, unremitting, and wholly unresponsive to therapeutic

6

treatment." Id. at 618-19 (internal citations omitted). If a claimant suffers from a nonexertional limitation, the ALJ must rely on a vocational expert to establish that jobs exist in the economy. Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000).

There is substantial evidence to support the ALJ's findings that Carnahan had no significant nonexertional limitations of pain. There is certainly evidence that she has pain; however, there is not substantial evidence that the pain is "wholly unresponsive to therapeutic treatment." Selders, 914 F.2d at 618-19. On the contrary, Carnahan's relationship with Dr. Gorin shows that her pain was responsive to treatment. She admitted to feeling relief from pain medication and a prescribed corset, and Dr. Gorin's notes indicate a pattern of improvement.

Furthermore, an ALJ's assessment of a claimant's credibility is accorded great deference. Newton, 209 F.3d at 459. Here, the ALJ found that the "claimant's statements concerning her impairment and its impact on her ability to work are not entirely credible in light of the degree of medical treatment required, the reports of the treating and examining practitioners, and the findings made on the examination." We find that statement supported by substantial evidence. For example, Dr. Humphries' report indicates that Carnahan provided unreliable testing data.

B. Substantial medical evidence

Carnahan argues that there was not substantial medical evidence to support a finding of not disabled. She contends that

7

Dr. Gorin's Residual Functional Capacity form is unclear and does not constitute substantial evidence. She also alleges that the ALJ erred in considering only part of Dr. Humphries' report.

Carnahan's arguments are without merit. "We have long held that 'ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability.'" Greenspan, 38 F.3d at 237 (quoting Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)). However, when good cause is shown, such as statements that are brief and conclusory or unsupported by medically acceptable techniques or evidence, the testimony may be given little or no weight. Id. (quoting Scott, 770 F.2d at 485). We find that Dr. Gorin's opinion was entitled to considerable weight as Dr. Gorin was her treating physician and had the most extensive relationship with her. His report is not unclear as it indicates Carnahan can walk or stand for one-half hour continuously and can sit for two hours continuously. It is also consistent with Dr. Humphries' diagnosis, which concluded that Carnahan could even perform light to medium work if her need to alternate sitting and standing was accommodated. The ALJ's opinion shows that she considered all of the evidence carefully and found that Dr. Gorin's opinion outweighed the earlier conclusion of Dr. Bernauer.

C. Vocational Expert

Relying solely on the Medical Vocational Guidelines of

Appendix 2 of the regulations, the ALJ concluded that Carnahan was not disabled.  Based on the evidence, the ALJ found that Carnahan could engage in sedentary work, and that, because of her residual functional capacity, age, education, and work experience, the guidelines demonstrated a significant number of available jobs.  Thus, the ALJ found Carnahan to be not disabled.  Carnahan argues that the ALJ erred by not consulting a vocational expert as to how her need to alternate sitting and standing would affect her ability to perform the full range of sedentary work.

Because we have found that substantial evidence supports the ALJ's factual conclusions, we must now determine if the ALJ followed the proper legal standards in finding that Carnahan could perform a full range of sedentary work.  Scott, 30 F.3d at 34.  In finding Carnahan not disabled because she had the exertional capacity for sedentary work without relying on a vocational expert's testimony, the ALJ assumed that Carnahan's need to alternate sitting and standing could be accommodated by breaks at two-hour intervals.

The Medical Vocational Guidelines were promulgated to improve uniformity and efficiency.  Heckler v. Campbell, 461 U.S. 458, 461 (1983); see 20 C.F.R. Pt. 404, Subpt. P, App. 2.  The Supreme Court has explained the guidelines as follows:

These guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in

9

the national economy.  They consist of a matrix of the four factors identified by Congress–physical ability, age, education, and work experience–and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy . . . If such work exists, the claimant is not considered disabled.

Campbell, 461 U.S. at 461-62.  This circuit has held "that the Secretary may rely on the medical-vocational guidelines to establish that work exists for a claimant only if the guidelines' 'evidentiary underpinnings coincide exactly with the evidence of disability appearing on the record.'"  Scott, 30 F.3d at 34.

The Social Security Regulations define sedentary work as involving lifting no more than ten pounds at a time, occasionally lifting small items, and sitting with a certain amount of walking and standing.  20 C.F.R. §§ 404.1567, 416.967.  The Social Security Administration has also issued several rulings addressing the definition of sedentary work and the implications of the need to alternate sitting and standing.[2]  Social Security Ruling (SSR) 83-10 states that, for sedentary work, one should stand or walk no more than two hours of an eight-hour workday and should sit approximately six hours of the workday.  1983 WL 31251, *5

_____

[2]The Social Security Administration's rulings are not binding on this court, but may be consulted when the statutes provide little guidance.  B.B. ex. rel. A.L.B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. 1981).

10

(S.S.A.).

SSR 83-12 states,

Where an individual's exertional RFC [residual functional capacity] does not coincide with the definition of any one of the ranges of work . . ., the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access its significance . . . Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource.

1983 WL 31253, *2 (S.S.A.). Furthermore, if a claimant must alternate positions, that person is not functionally capable of the prolonged sitting contemplated by sedentary work, but persons who can adjust to any need to alternate by doing so at breaks and lunch periods could still perform a defined range of work. Id. at *4.

SSR 96-9p[3] defines a full range of sedentary work as remaining

---

[3]SSR 96-9p became effective on July 2, 1996, after the Commissioner affirmed the denial of Carnahan's benefits; however, while we acknowledge that the ruling was not binding precedent on the ALJ, we nevertheless consult the ruling for guidance on this issue. In doing so, we agree with the Seventh Circuit's analysis in Lauer v. Apfel, 169 F.3d 489, 492 (7th Cir. 1999) ("SSRs are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs 'binding on all components of the Social Security Administration.' The parties do not dispute the application of SSR 96-9p to this case, even though the SSR was not issued until after [appellant's]

11

"in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours in an 8-hour workday, the unskilled sedentary occupational base will be eroded." 1996 WL 374185, *6 (S.S.A.). If a claimant needs to alternate between sitting and standing, the ruling concludes that "[w]here this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded" and that the extent of erosion will depend on the facts, including the frequency of the need to alternate. Id. at *7.

We find that the ALJ applied the proper legal standard. There is substantial evidence that Carnahan can sit for six hours, as evidenced by Dr. Gorin's Residual Functional Capacity report. This ability meets the evidentiary underpinnings of the guidelines. See Scott, 30 F.3d at 34. There is also substantial evidence that Carnahan can sit continuously for two hours; thus, she can adjust her need to alternate positions with breaks every two hours. In so holding, we find that an ALJ may properly consider whether a claimant's need to alternate sitting and standing may be accommodated by "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." SSR 96-9p, 1996 WL 374185 at *6. This interpretation is consistent with the SSRs, as

administrative hearing.") (internal citations omitted).

12

SSR 96-9p does not consider the full range of unskilled sedentary work to be eroded where the need to alternate positions can be accommodated by "scheduled breaks and a lunch period," and SSR 83-12 considers individuals who may adjust with scheduled breaks to be able to perform a defined range of work.

We are equally persuaded by the case law of the Fifth Circuit. Most relevant is Scott v. Shalala, 30 F.3d at 34, where the court concluded that "[b]ecause Scott must alternate between sitting and standing *as needed*, Scott's exertional capabilities do not fit within the definition of sedentary work." (emphasis added). The court remanded for consideration of vocational expert testimony. Id. Here, unlike in Scott, where the ALJ specifically found that Scott required the option to sit or stand as needed, the ALJ adopted the findings of Dr. Gorin that Carnahan could sit continuously for two hours without needing to stand. Thus, the guidelines' "evidentiary underpinnings coincide exactly with the evidence of disability appearing on the record." Id. (quoting Lawler, 761 F.2d at 197). Additionally, Moon v. Bowen, 810 F.2d 472, 473 (5th Cir. 1987), involved a claimant who testified that he could sit for two hours before his pain increased. The ALJ relied solely on the guidelines to find him not disabled as he could perform sedentary work. Id. The denial of benefits was affirmed on the age factor, but the case implicitly demonstrates that the ability to sit for two hours continuously was justification for

13

reliance on the guidelines.

We also find support for our decision that reliance on the medical guideline was appropriate in the persuasive authority of other courts who have addressed substantially similar issues. In Johnson v. Shalala, No. 2:92 CV 279, 1994 WL 809110, *4 (N.D. Ind. Nov. 30, 1994), a claimant could not sit for more than an hour so the ALJ properly consulted a vocational expert. In Wages v. Secretary of Health and Human Services, 755 F.2d 495, 499 (6th Cir. 1985), the court reversed a denial of benefits because the claimant had to alternate between sitting and standing as she found necessary and thus could not perform the range of sedentary work. Howse v. Heckler, 782 F.2d 626, 627-28 (6th Cir. 1986), reversed a denial of benefits on the basis that the claimant could not perform sedentary work because he was incapable of sitting or standing for longer than one hour at a time. In Davis v. Secretary of Health and Human Services, 915 F.2d 186, 188 (6th Cir. 1990), an ALJ consulted a vocational expert because the claimant's doctor said he could sit only four hours of an eight-hour workday. See Talbott v. Bowen, 821 F.2d 511, 515 (8th Cir. 1987) (Because the claimant could sit for only an hour at a time, the court found that the guidelines could not replace expert testimony). In Shiner v. Heckler, No. 84-0703-C, 608 F.Supp. 481, 484 (D. Mass. May 7, 1985), the claimant could only sit for ten minutes at a time, and a vocational expert was consulted. The court found that where a claimant has to interrupt work with periods of prone rest, he cannot perform

14

sedentary work, but that an ability to perform sedentary work must be predicated on a finding that claimant can sit for most of the day with occasional interruptions of short durations. Id. at 484. Unlike Carnahan, these claimants were not able to accommodate their need to alternate positions with breaks at two-hour intervals.

Therefore, based on a review of the applicable regulations, rulings, and persuasive case law, we find Carnahan's argument that vocational expert testimony was required without merit.

### IV.  Conclusion

For the foregoing reasons, the decision of the district court is AFFIRMED.