**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 21, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

DEBBIE J. BROCK,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,[*]
Commissioner, Social Security
Administration,

Defendant-Appellee.

No. 06-6271
(D.C. No. CIV-05-1324-F)
(W.D. Okla.)

**ORDER AND JUDGMENT**[**]

Before **BRISCOE**, **McKAY**, and **GORSUCH**, Circuit Judges.

Plaintiff-Appellant Debbie Brock appeals from a district court order

affirming the Social Security Commissioner's decision to deny her applications

for social security disability benefits ("SSD") and supplemental security income

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for
Jo Anne B. Barnhart as appellee in this appeal.

[**]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

payments ("SSI") under Titles II and XVI of the Social Security Act. Exercising our jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we AFFIRM.

I.

In 2003 Ms. Brock filed her applications for SSD and SSI claiming an inability to work since September 1, 2002, due to chronic lower-back pain as well as numbness and pain in her right arm and hand. Although not mentioned in her original applications, she also claims to be suffering from disabling depression. The Commissioner denied Ms. Brock's applications initially and on reconsideration, and Ms. Brock obtained a de novo hearing before an administrative law judge ("ALJ"), which took place on November 10, 2004.

On March 14, 2005, the ALJ denied Ms. Brock's applications because he determined based on the medical-vocational guidelines that she is not disabled within the meaning of the Social Security Act. Although he found that she suffered from a number of impairments that were severe either singly or in combination, the ALJ concluded that Ms. Brock nonetheless retained the residual functional capacity ("RFC") to perform the full range of sedentary work. More specifically, as relevant to this appeal, the ALJ rejected Ms. Brock's claim that her depression interfered with her ability to perform basic work-related activities. To the contrary, he concluded based on the medical evidence that Ms. Brock did not suffer from any severe mental-health impairment. The ALJ was also unconvinced by Ms. Brock's hearing testimony that she suffers from intractable,

unrelenting pain in her lower back and lower extremities, concluding that such claims were inconsistent with prior statements in the medical record. The ALJ concluded that the medical evidence as a whole, particularly the treating physicians' notes, weighed heavily against Ms. Brock's allegations of disability.

> The allegations of symptom levels that preclude all types of work are not consistent with the evidence as a whole and are not credible. None of the physicians involved in claimant's evaluation have provided objective findings which would indicate that claimant was disabled nor have they provided any credible statement or recommendation that she has been unable to perform substantial gainful activity for a continuous period of at least 12 months.

Aplt. App. at 19.

Ms. Brock appealed the ALJ's decision to the Appeals Council, which denied her request for review. Thus, the ALJ's decision is the final decision of the Commissioner for the purposes of our review. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004).

## II.

Ms. Brock challenges the ALJ's decision on three grounds. First, she contends that the ALJ's analysis as it relates to her depression is internally inconsistent and that he erred in failing to consider her depression in formulating her RFC. Second, she argues that the ALJ's RFC determination also failed to account for the fact that she has only a limited ability to stoop, as found by the agency's consulting physician. Third, she argues that the ALJ erroneously

disregarded the opinions of her treating physicians concerning the functional limitations caused by her disabling pain.

The scope of our review in a Social Security case is limited to determining whether the ALJ applied the correct legal standards and whether his factual findings are supported by substantial evidence, or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks omitted). "In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

*A. Depression*

Ms. Brock first contends that the ALJ's decision is internally inconsistent, and thus unreviewable, to the extent that it disregards her allegations of disabling depression. This challenge is based on a paragraph at the beginning of the ALJ's opinion that recites all the impairments revealed by the medical evidence, including depression, and then states that these impairments, either "singly or in combination," are "severe" within the meaning of the regulations, but not severe enough to meet or medically equal any of the impairments contained in the regulatory listings. Aplt. App. at 16. As we mentioned above, the ALJ ultimately concluded that Ms. Brock's depression was not a severe impairment and that she did not suffer from any other severe mental-health impairment. Ms. Brock argues

that this ultimate conclusion cannot stand given that, at the outset of his opinion, the ALJ listed depression among her severe impairments.

We conclude this argument is based on a misinterpretation of the ALJ's findings. As the district court explained, it was not inconsistent for the ALJ to conclude that Ms. Brock's depression standing alone was not a severe impairment, although it may have been severe in combination with limitations imposed by her other impairments. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *5 (explaining that a "not severe" impairment standing alone may not significantly limit an individual's ability to do basic work activities, but may when considered alongside other impairments). Moreover, even if we accepted this semantic argument, we would need more to reverse the ALJ's determination that Ms. Brock's depression is not a severe impairment. Our review of the record, however, confirms that substantial evidence supports the ALJ's conclusion.

Ms. Brock provided medical records dating back to 1991, eleven years before the alleged onset of her disability. Depression is first mentioned in a July 15, 2003, report by Dr. Fred Williams, Ms. Brock's urologist, where he simply noted that Ms. Brock was taking Zoloft for depression. In another report dated August 18, 2003, Dr. Williams again noted that Ms. Brock was taking "Zoloft 50mg at night for mild depression." Aplt. App. at 177. The record also contains a December 1, 2003, psychiatric report completed by Dr. Margaret McKinney, an agency consulting physician. Dr. McKinney noted the prescription for Zoloft

(now only 25mg) as well as Ms. Brock's reports of "mental stress. . . caused by lack of income and inability to work." *Id.* at 213. The report goes on to note, however, that Ms. Brock's activities of daily life, while limited by pain, included "shop[ping], visit[ing] once a week, [and] attend[ing] monthly meetings of quarterback club, rodeo association and FFA booster." *Id.* Her hobbies included reading and painting. After reviewing Ms. Brock's medical records, Dr. McKinney found "[n]o evidence of a severe mental impairment." *Id.* The only evidence in the record that Ms. Brock suffers from depression appears to be her own testimony and the fact that she apparently takes an anti-depressant. She has not told us who prescribed this medication, however, and there is no indication in the record that Ms. Brock ever sought treatment from a psychiatrist. In short, she has offered no legitimate grounds for reversing the ALJ's determination that she does not suffer from a severe mental-health impairment.

In a related argument, Ms. Brock contends that the RFC should have reflected some limitations associated with depression because the ALJ did conclude that her depression was severe in combination with her other impairments. But this argument ignores the part of the ALJ's decision where, in accordance with applicable regulations, he considered whether Ms. Brock was limited in any of the four broad functional areas associated with mental health impairments: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R.

§§ 404.1520a(c)(3), 416.920a(c)(3); Aplt. App. at 17-18. Based on Dr. McKinney's report, the ALJ concluded that Ms. Brock has no functional limitations in any of these areas, and his RFC assessment, in accordance with that conclusion, properly reflects no such limitations.

We conclude that the ALJ properly analyzed Ms. Brock's claim of depression, and for the reasons discussed above, we will not upset his determination. *See Branum*, 385 F.3d at 1273 (upholding ALJ's analysis of plaintiff's mental-health impairment).

*B. Ms. Brock's Limited Ability to Stoop*

Ms. Brock's second argument is based on the ALJ's failure to include in his RFC assessment the opinion of Dr. Gordon Strom, an agency consulting physician, that Ms. Brock cannot stoop more than occasionally. This argument is unavailing, however, because as the Commissioner points out, Ms. Brock's stooping limitation does not affect her ability to perform the full range of sedentary work, as found by the ALJ. The Commissioner has previously stated:

> An ability to stoop occasionally . . . is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, *but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.*

Social Security Ruling 96-9p, 1996 WL 374185, at *8 (second emphasis added); *cf. Lauer v. Apfel*, 169 F.3d 489, 493 (7th Cir. 1999) (holding that SSR 96-9p

does not require a finding of disability even in cases where the claimant is completely unable to stoop).  Thus, the ALJ's failure to mention Ms. Brock's stooping limitation in formulating an RFC that requires no more than occasional stooping is no grounds for reversal.

### C.  Disabling Pain

Finally, Ms. Brock argues that the ALJ improperly disregarded the opinions of Dr. Strom and her treating physician Dr. J. Brett Dietze concerning her complaints of lower-back pain.  More specifically, she claims that the ALJ ignored references in their treatment notes indicating that she continued to experience pain even after her second back surgery.  We reject this argument for the same reasons it was rejected by the district court.  As that court noted, the crux of this issue is not whether the ALJ duly considered the opinions of Ms. Brock's physicians, it is whether her subjective complaints of back pain are credible.[1]

A social security claimant's subjective allegations of pain are evaluated in accordance with the framework set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987).  Under that framework,

> [w]e must consider (1) whether Claimant established a
> pain-producing impairment by objective medical evidence; (2) if so,

---

[1]     As in the district court, Ms. Brock failed to identify on appeal any specific medical opinion concerning her functional limitations that was disregarded by the ALJ.

whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Branum*, 385 F.3d at 1273 (quotation omitted). The medical evidence in this case indisputably establishes, and the ALJ found, that Ms. Brock has a pain-producing back impairment. He also concluded that she met the second prong of the *Luna* three-part inquiry. Therefore, the ALJ correctly went on to consider all of the evidence to determine whether Ms. Brock's non-exertional impairments direct a finding of disability. *See Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994) (approving ALJ's analysis under *Luna*). In so doing, the ALJ was tasked with evaluating Ms. Brock's subjective complaints of pain. As the "trier of fact, the individual optimally positioned to observe and assess witness credibility," we must defer to the ALJ's credibility determination. *Casias*, 933 F.2d at 801.

The medical evidence reveals that Ms. Brock has suffered from chronic back pain since at least 1991. She underwent her first back surgery, to repair a disc herniation at L5-S1, in 1995. The medical reports following this first surgery indicate that it was only moderately successful in alleviating her pain. Curiously, however, she did not seek further medical attention for her back until January 2001, when she saw Dr. Dietze. Dr. Dietze diagnosed recurrent L5-S1 disc herniation and performed a second surgery on February 9, 2001. After this surgery, Ms. Brock complained of a new pain radiating into her left leg, but a CT

scan revealed nothing significant. A month later, in March 2001, Dr. Dietze's notes indicate that Ms. Brock was "much better than she was before surgery, but still [was] having some pain radiating into her left leg." Aplt. App. at 150. She continued to progress, however, as reflected in the following notes from a May 1, 2001, visit: "Mrs. Brock is doing much better. She is still having occasional problems with back pain. Her leg pain is all completely resolved. She is all in all very happy." *Id.*

It appears that Ms. Brock did not return to Dr. Dietze for two years following this May 2001 visit. In fact, the medical record is devoid of any reports of back pain between May 2001 and the alleged onset date of her disability, September 1, 2002. Ms. Brock's complaints of back pain resurface in the record in May 2003, one month before she filed her disability application. Then, she complained of low back pain, mostly at night, and occasional pain in her left leg. An MRI scan once again revealed degenerative changes at L5-S1, and Dr. Dietze prescribed six weeks of physical therapy. Ms. Brock missed or cancelled several appointments. Ms. Brock submitted to a consultative examination by Dr. Strom in September 2003. He diagnosed her with "failed back syndrome with chronic back pain" and noted that she appeared to have some weakness in her right leg, but pointed out that his findings were "minimal." *Id.* at 187. He also noted that Ms. Brock's limitations may have been exaggerated because she was still recuperating from a recent bladder surgery. During the exam, Ms. Brock was able

to fully extend both knees and despite the weakness in her right leg, she was able to walk around unassisted.

Based on this evidence, the ALJ concluded that the true extent of Ms. Brock's functional limitations was significantly less than what she alleged and he specifically rejected her allegations of intractable, unrelenting pain in her lower back. "The medical evidence (including the frequency upon which claimant has sought treatment) tends to suggest that claimant, rather than experiencing pain of an intractable nature, experiences severe pain on only rare occasion." *Id.* at 19. In assessing Ms. Brock's credibility, the ALJ was particularly influenced by the sporadic nature of her complaints of back pain. For example, he found particularly troubling the fact that she was not seeking any treatment in September 2002, even as her pain allegedly became disabling. The opinion reflects that the ALJ conducted the appropriate analysis, and based on our own review of the record, we also conclude that he accurately read the medical evidence. In short, there is substantial evidence in the record to support the ALJ's conclusions. The decision of the Commissioner is, therefore, AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

-11-