In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1578

GLORIA CANNON,

Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner
of Social Security,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 98 C 3117--Charles H. Evans, Magistrate Judge.

Argued November 2, 1999--Decided May 24, 2000

Before COFFEY, FLAUM and KANNE, Circuit Judges.

COFFEY, Circuit Judge.  In January 1993, the Social Security Administration ("SSA") certified Sampson Strong ("Strong") as a "representative payee" to receive Supplemental Security Income ("SSI") payments on behalf of his minor niece, Gloria Faye Cannon ("Gloria")./1 A few weeks later, in February 1993, the SSA sent Strong a lump-sum payment of $23,202.98 in past due SSI on Gloria's behalf. But Strong neglected to use this money for Gloria's use and benefit, and on January 22, 1994, the SSA determined that Strong had misused $22,767.68 of Gloria's SSI money by spending it on himself.

Gloria sought reimbursement of her SSI benefits from the SSA, but the Commissioner denied her claim. On February 16, 1999, the district court affirmed the Commissioner's decision, stating that "there is substantial evidence to support the ALJ's finding that Defendant exercised reasonable care and was not negligent in appointing Strong as Plaintiff's representative payee." We affirm.

I.  BACKGROUND

A.  The SSA's Use of Representative Payments

The Social Security Act provides that since there are beneficiaries who are unable to direct the management of their own affairs, including their finances, the SSA may make payment of their

benefits to a "representative payee." See 42 U.S.C. sec.sec. 405(j)(1)(A) & 1383(a)(2)(A)(ii)(I).

The SSA's operating procedures require that it exercise "extreme care" in selecting representative payees. See Social Security Program Operations Manual System ("POMS") sec. GN 00501.005(C). Furthermore, in order to protect the funds of the beneficiaries against misuse by their representative payees, the Social Security Act provides that if the SSA is negligent in its selection of a representative payee, and that negligence results in misuse of the beneficiary's benefits, then the SSA is obligated to reimburse the beneficiary for the misused funds./2 On the other hand, if the SSA is not negligent in selecting a beneficiary's payee, but the payee, nevertheless, misuses the beneficiary's benefits, then the beneficiary must collect the misused payments from the representative payee directly. See 20 C.F.R. sec. 416.641.

B. The SSA's Certification of Strong as Gloria's Representative Payee

On December 5, 1990, shortly before her death, Gloria's terminally-ill mother, Georgia Mae Cannon, signed a social security consent form naming Strong as the representative payee for the Child's Insurance Benefits ("CIB") to which her three minor children, Gloria (15 years old), Barbara (15 years old), and Emanuel (5 years old) were entitled. Shortly thereafter, on December 13, 1990, the Illinois Circuit Court for Sangamon County appointed Strong to be the legal and custodial guardian of Gloria, Barbara, and Emanuel.

After the death of their mother, Georgia, on December 18, 1990, Gloria, her sister, and her brother began living with Strong in his Springfield, Illinois apartment. A few weeks later, in January 1991, the SSA appointed Strong as Gloria's representative payee for her CIB. From January 1991 through January 1993, Strong received $3670 in CIB funds on Gloria's behalf.

On December 23, 1992, the SSA awarded Gloria SSI benefits under 42 U.S.C. sec. 1381a (but did not yet turn over the funds). Shortly thereafter, Strong applied to the SSA to be appointed as the representative payee for Gloria's SSI benefits. On January 14, 1993, Strong submitted an Application Form SSA-11-BK (Request to be Selected as Payee) and a Form SSA-8000-BK (Application for Supplemental Security Income). On those forms that Strong filled out and submitted, he stated that he was Gloria's uncle, that she was a minor, and that she (and her

brother and sister) lived with him in his apartment. Furthermore, Strong claimed (falsely) that he had never been convicted of a felony.

After Strong submitted his payee application, he was interviewed by an SSA representative, where, once again, he stated that he had never been convicted of a felony./3 Contrary to Strong's assertions, he had in fact been convicted of three felonies: He was convicted in Detroit, Michigan, in 1955 for overdrawing unemployment benefits; in California, in 1970 for stealing an automobile; and in California, in 1976 for receiving stolen property. Because of its lack of diligence in engaging in a thorough investigation of Strong, the SSA did not have the benefit of this information. So, based on the fact Gloria lived with Strong, and that Strong was her uncle and court-appointed legal guardian, and that Strong had previously served as her CIB payee (on the recommendation of her now deceased mother), on January 12, 1993, the SSA certified Strong as Gloria's SSI representative. On February 22, 1993, Strong received $23,202.98 on Gloria's behalf, and continued to receive Gloria's $300 monthly SSI checks until September 1993, at which time Gloria started receiving her SSI checks directly./4

C. Strong's Performance as Gloria's Representative Payee

On October 13, 1993, Gloria's sister, Barbara, submitted a signed statement to the SSA stating that Strong had misused approximately $23,000 of Gloria's SSI benefits. At about this time, Gloria, obviously upset that Strong had misused the funds, appointed Linda Rockey ("Rockey") as her representative, and Rockey submitted a signed statement which stated that Gloria never received the benefits that the SSA had paid to Strong.

In response to these allegations of misuse, the SSA, which had already stopped sending Gloria's SSI checks to Strong, asked Strong for an accounting. But Strong failed to respond and provide the requested accounting information, and on January 22, 1994, the SSA determined that Strong had misused $22,767.68 of Gloria's SSI benefits. See 20 C.F.R. sec. 416.635(a); POMS sec. GN 00604.001(B)(4)./5

In a letter dated March 27, 1995, the SSA demanded restitution from Strong, informing him, "you will have to return the $22,767.68 of the Supplemental Security Income money we sent you as Gloria Cannon's payee. We have decided that you did not use this money for her as you agreed to do. For that reason you must pay us back."/6

D. Gloria's Claim for Reimbursement of Her Misused SSI Funds

Although Gloria was able to recover some/7 of the misused funds from Strong,/8 she attempted to recover the remainder of the funds directly from the SSA. See POMS sec. GN 00604.035(C). As stated before, the SSA came to its own defense, determining that it had not been negligent in selecting Strong as Gloria's representative payee, and that decision was subsequently upheld both by the ALJ and by the Appeals Council.

Thereafter, Gloria sought review of the ALJ's decision in the United States District Court for the Central District of Illinois. Gloria alleged that the SSA violated 42 U.S.C. sec. 1383(a)(2)(E) by negligently selecting Strong as her representative payee. Both parties filed motions for summary judgment. The Magistrate Judge/9 granted the Commissioner's motion for summary judgment and denied Gloria's motion for summary judgment, finding that "there is substantial evidence to support the ALJ's finding that Defendant exercised reasonable care and was not negligent in appointing Strong as Plaintiff's representative payee." We affirm.

II. ISSUES

On appeal, Gloria argues: (1) that the ALJ's finding that the SSA was not negligent in selecting Strong as her representative payee is not supported by substantial evidence; (2) that the SSA's administrative review of her claim violated her right to constitutional due process; and (3) that the ALJ failed to develop a fair and complete record by refusing to allow Gloria's representative to testify.

III. ANALYSIS

A. The SSA's Selection of Strong as Representative Payee

1. Standard of Review

As we have long held, we will uphold the Commissioner of Social Security's decision, if the ALJ's findings of fact are supported by substantial evidence and no error of law was committed. See Nelson v. Apfel, 131 F.3d 1228, 1234 (7th Cir. 1997); see also 42 U.S.C. sec. 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). To determine whether substantial evidence exists, the court reviews the record as a whole but is not allowed to substitute its judgment for the ALJ's "by reconsidering facts, reweighing

evidence, resolving conflicts in evidence, or deciding questions of credibility." Williams v. Apfel, 179 F.3d 1066, 1071-72 (7th Cir. 1999) (internal quotations omitted); see also Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998). In agency cases, a mere scintilla of proof will not suffice to uphold the SSA's findings, but the standard of "substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

## 2. Deference to the SSA's Determination of an Adequate Investigation

Gloria contends that the SSA was negligent because it failed to ascertain whether Strong had a criminal arrest and conviction record as part of its investigation. In determining whether the SSA has an obligation to check the criminal background of candidate representative payees, we look first to the language of the Social Security Act. See United States v. Balint, 201 F.3d 928, 932-33 (7th Cir. 2000). The relevant statute requires that the SSA investigate representative payees in a manner calculated to produce "adequate evidence" of the representative payee's fitness:

(i)  Any determination made under subparagraph (A) for payment of benefits to the representative payee of an individual or eligible spouse shall be made on the basis of--

(I)  an investigation by the Commissioner of Social Security of the person to serve as representative payee, which shall be conducted in advance of such payment, and shall, to the extent practicable, include a face-to-face interview with such person; and

(II)  adequate evidence that such payment is in the interest of the individual or eligible spouse (as determined by the Commissioner of Social Security in regulations).

(ii)  As part of the investigation referred to in clause (i)(I), the Commissioner of Social Security shall--

(I)  require the person being investigated to submit documented proof of the identity of such person, unless information establishing such identity was submitted with an application for benefits under subchapter II of this chapter or this subchapter;

(II)  verify the social security account number (or employer identification number) of such

person;

(III)  determine whether such person has been convicted of a violation of section 408 or 1383a of this title; and

(IV)  determine whether payment of benefits to such person has been terminated pursuant to subparagraph (A)(iii), and whether certification of payment of benefits to such person has been revoked pursuant to section 405(j) of this title, by reason of misuse of funds paid as benefits under subchapter II of this chapter or this subchapter.

42 U.S.C. sec.1383(a)(2)(B)./10

Nothing in the statutory language explicitly requires the SSA to conduct criminal background checks of those who apply to be appointed as representative payees. Moreover, the statute commits to the SSA's discretion what constitutes "adequate evidence," defining "adequate evidence" as that evidence "determined by the Commissioner of Social Security in regulations." 42 U.S.C. sec. 1383(a)(2)(B)(i)(II). And although the SSA has not implemented regulations concerning this statute, we nevertheless owe SSA's interpretation of this statute "respectful consideration." See First Chicago NBD Corp. v. Commissioner of Internal Revenue, 135 F.3d 457, 458-59 (7th Cir. 1998); Parsons v. Pitzer, 149 F.3d 734, 738 (7th Cir. 1998) (citing Reno v. Koray, 515 U.S. 50, 61 (1995)); see also City of Chicago v. FCC, 199 F.3d 424, 429 (7th Cir. 2000) ("An agency's interpretation of a statute it administers commands deference, regardless of whether it emerges as a result of an adjudicative proceedings [sic] or a rulemaking process.") (citing Cowherd v. United States Dep't of Hous. and Urban Dev., 827 F.2d 40 (7th Cir. 1987)).

3.  The Applicability of Holt v. Bowen

Gloria relies on Holt v. Bowen, 712 F. Supp. 813 (D. Colo. 1989), in support of her contention that the SSA was negligent in failing to investigate Strong's criminal background./11

But, even assuming that Holt is applicable, the holding in that case at most requires the SSA to do criminal background investigations of candidate representative payees where it has a good reason to do so. The Holt court stated: "We do not infringe upon the [SSA's] authority to determine the scope of the investigation of proposed representative payees. However, at a minimum, such an investigation should include appropriate background questions along with a face-to-face interview. Answers to these

questions could then be used in determining the need for further investigation." Holt, 712 F. Supp. at 815./12

In Holt, the court determined that the SSA was negligent in failing to investigate Reginald Holt's proposed representative payee, Billy Stewart, because Stewart had no significant connection to the claimant, he gave a bad address, and he gave an incorrect job reference. These factors all indicated that Stewart might not be a suitable payee. Thus, the court found that the SSA had a duty to investigate Stewart further. See Holt, 712 F. Supp at 815.

The circumstances in this case, in contrast to those in Holt, suggested to the SSA representative that there was no reason for "further investigation" of Strong. As the ALJ explained, "[t]here was nothing presented to the SSA at that time to show that such a procedure should have been followed." Not only did the SSA's investigation of Strong not raise any red flags, but Strong satisfied several conditions which the SSA considers to be strongly indicative of payee suitability.

First, Strong was Gloria's court-appointed legal guardian. The Sangamon County, Illinois Court had already determined that Strong was a suitable person to act in Gloria's best interests. See 20 C.F.R. sec. 416.621(b)(1); POMS sec.sec. GN 00502.105(C) & GN 00502.139(B)(1). Second, Strong is Gloria's uncle. See 20 C.F.R. sec.sec. 416.620(a) & 416.621(b)(4). Third, Strong had custody of Gloria. See 20 C.F.R. sec.sec. 416.620(d) & 416.621(b)(4). Finally, Strong had prior experience managing and accounting for Gloria's benefits. See 20 C.F.R. sec. 416.620(e). With the consent of Gloria's mother, Strong had been appointed representative payee for Gloria's CIB. Strong performed well as Gloria's CIB payee for the two year period from January 1991 to January 1993. He received approximately $3670 on Gloria's behalf, and Gloria does not allege that Strong misused any of those funds. See POMS secs. GN 00502.130 (B)(2) & GN 00502.136(A).

Accordingly, considering the record as a whole, we are forced to hold that there is "such evidence as a reasonable mind might accept as adequate to support a conclusion" that the SSA exercised reasonable care in appointing Strong as Gloria's representative payee./13

4. The Adequacy of the SSA's Monitoring of Strong

Section 1383 requires that the SSA not only investigate representative payees before

certifying them but also that the SSA monitor representative payees once they are certified in order to make sure that they are acting in the best interests of the beneficiaries they represent. See 42 U.S.C. sec. 1383(a)(2)(C); POMS sec. GN 00604.051(A). Gloria contends that the SSA was negligent in paying her $23,202.98 SSI award to Strong because it had actual notice that Strong had previously misused SSA benefits.

Initially, Gloria contends that when her sister, Barbara Cannon, filed a request to be her own payee in January 1993, Barbara informed the SSA that Strong had refused to hand over her CIB checks for December 1992 and January 1993. The SSA denies that it was notified of Strong's misuse of funds at that time. The Appeals Council found, "The 'Request to be Selected as Payee' filed by Barbara M. Cannon on January 15, 1993 states only that she no longer lived with her payee and would prefer to receive her own checks. There is no mention of misuse of funds by Sampson Strong."

We have repeatedly held that "an ALJ's credibility determination will not be disturbed unless it is patently wrong." See, e.g., Diaz, 55 F.3d at 308. Here, the ALJ's credibility finding is supported by the record. Barbara Cannon's request to be her own payee states only:

I feel that I am able to manage my own funds. I am no longer living with my payee and would prefer to receive my own checks. I am living with a friend and feel that I would [be the] best payee for my benefits. The people I am living with are not related to me.

There is no typed or handwritten statement on this request (or any other documented proof in the record) alleging misuse by Strong. Thus, we will not disturb the ALJ's finding that Barbara Cannon did not inform the SSA of Strong's misuse of her CIB prior to the SSA's payment of her sister's $23,202.98 SSI award in February 1993.

Next, Gloria contends that the SSA had actual notice of Strong's misuse of SSI funds when, in August 1992, Strong failed to provide a requested representative payee accounting as required under 20 C.F.R. sec. 416.665. The SSA sent Strong two "nonresponder alerts" both dated August 2, 1992, for failure to report expenditures for Barbara Cannon and Emanuel Cannon. But by August 20, 1992, Strong provided the requested Representative Payee Reports and the reports failed to reflect any foul play or irregularity in the use of benefits that had been paid. Strong's tardiness in submitting the accounting reports was not so unusual that it would have

alerted the SSA to possible misuse. Cf. POMS sec. GN 00605.085 (allowing payees up to six months to respond to a nonresponder alert). Accordingly, we are of the opinion that there is "such evidence as a reasonable mind might accept as adequate to support a conclusion" that the SSA exercised reasonable care in monitoring Strong.

B.  Due Process Problems with SSA Self-Evaluation

Gloria next contends that the SSA's administrative review of her claim for reimbursement violated her right to constitutional due process because the SSA, "should not evaluate itself on questions regarding its own negligence. . . . SSA cannot possibly evaluate itself in such matters where it has a clear conflict of interest in the outcome." To the extent that Gloria attacks the institution of administrative review, the Supreme Court has rejected this assertion. See Richardson v. Perales, 402 U.S. 389, 410 (1971) ("Neither are we persuaded by the advocate-judge-multiple-hat suggestion. It assumes too much and would bring down too many procedures designed, and working well, and for a governmental structure of great and growing complexity."). To the extent that Gloria attempts to get around the high degree of deference that we accord to ALJ decisions, see, e.g., Estok, 152 F.3d at 638, by attacking the neutrality of the ALJ in this particular case, Gloria has failed to identify any evidence to substantiate such an assertion. Cf. Chapman v. U.S. Commodity Futures Trading Comm'n, 788 F.2d 408, 411 (7th Cir. 1986). Accordingly, we hold that the SSA afforded Gloria constitutional due process.

C.  The Fairness of the Hearing

Finally, Gloria contends that the ALJ hearing was not fair because the "ALJ's failure to fully develop the record prejudiced the outcome of [her] case." Gloria argues that the ALJ should have allowed her non-attorney representative, Linda Rockey, to testify as a witness at the hearing. The ALJ informed Rockey that she could not act both as Gloria's representative and as a witness.

ALJ:  No you can't act as a representative and as a witness.

REP:  Okay. Well, that makes sense.

But the ALJ allowed Rockey to bring out any facts and arguments that she requested to make known while acting in her capacity as representative. Cf. Butera v. Apfel, 173 F.3d 1049, 1059 (7th Cir. 1999). The ALJ told Rockey

at the hearing, "the record will be left open for two weeks for you to mail a statement in then if you desire." Cf. 20 C.F.R. sec. 416.1510(a)(3) ("Your representative may, on your behalf--make statements about facts and law."); 20 C.F.R. sec. 416.1449 ("[Y]our representative may . . . enter written statements about the facts and law material to your case into the record."). Gloria has failed to identify any evidence that was not obtained or how a lack of evidence prejudiced her. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant remand." Binion v. Shalala, 13 F.3d 243, 246 (7th Cir. 1994). Accordingly, we hold that the ALJ developed a fair and complete record.

IV.  CONCLUSION

On the face of the record, we are forced to agree with the district court's determination that there is substantial evidence in the record supporting the ALJ's decision, finding that the Commissioner was not negligent in selecting Strong as Gloria's representative payee. Thus, the SSA is not liable under 42 U.S.C. sec. 1383(a)(2)(E) to reimburse Gloria for the SSI payments misused by Strong until the SSA recovers those funds from Strong. But we strongly caution that in the future it would be advisable for the SSA to at least ascertain if a representative payee has an arrest and conviction record, as it would not be an administrative burden for the SSA to perform this minimal investigation./14 We further hold that the SSA afforded Gloria constitutional due process and that the ALJ developed a fair and complete record.

AFFIRMED

FOOTNOTES

/1 A "representative payee" is "the person, agency, or institution selected to receive and manage benefits on behalf of an incapable beneficiary." POMS sec. GN 00501.005(D).

/2 In cases where the negligent failure of the Commissioner of Social Security to investigate or monitor a representative payee results in misuse of benefits by the representative payee, the Commissioner of Social Security shall make payment to the beneficiary or the beneficiary's representative payee of an amount equal to such misused benefits. The Commissioner of Social Security shall make a good faith effort to obtain restitution from the terminated representative payee.

42 U.S.C. sec. 1383(a)(2)(E); see also POMS sec.

GN 00604.060(B).

/3 In addition to these representations, Strong also stated that he was never convicted of a felony on his December 5, 1990 application to be representative payee for Gloria's CIB benefits as well as on his August 1992 payee accounting report.

/4 As of September 1993, Gloria had turned eighteen years old, moved out of Strong's apartment, and moved in with her sister Barbara.

/5 Strong later admitted in an Illinois state court proceeding that he used most of the money for his own purchases, including a Cadillac automobile, electronic equipment, and furniture.

/6 After Strong did not return the misused funds, the SSA commenced a civil action against Strong to recover the funds pursuant to 42 U.S.C. sec. 1383(a)(2)(E) (Count One) and 31 U.S.C. sec. 3729 (Count Two). On April 21, 1999, the U.S. District Court for the Central District of Illinois rendered a judgment against Strong on Count One, requiring him to repay the misused $22,767.68 with future costs and interest. United States v. Strong, Civ. No. 99-3003 (C.D. Ill. Apr. 21, 1999) (Consent Judgment).

/7 The record does not reflect the exact amount.

/8 After the SSA issued its January 1994 determination that Strong had misused her funds, Gloria proceeded to collect some of the misused funds from Strong directly. For example, in an Illinois state court action, Gloria obtained a turn-over order requiring that Strong turn over his 1986 Cadillac for which he had paid $6500. In re Cannon, No. 90-P-696 (Ill. Cir. Ct., Sangamon Cty. Mar. 15, 1994).

/9 On January 22, 1999, in accordance with 28 U.S.C. sec. 636(c)(1), both parties consented to proceed before a United States Magistrate.

/10 The district court quoted similar language from 42 U.S.C. sec. 405(j)(2). But because Gloria's reimbursement claim concerns her SSI benefits under Title XVI rather than her CIB benefits under Title II, we will analyze Gloria's claim for reimbursement under 42 U.S.C. sec. 1383(a)(2)(B).

/11 Gloria also relies on a proposed regulation, Denial of Supplemental Security Income Benefits for Fugitive Felons and Probation and Parole Violators, 63 Fed. Reg. 32,161 (1998). But this regulation is inapposite both because it post-dates the SSA's conduct in the instant case and

because it only requires the SSA to investigate the criminal status of SSI recipients, not that of representative payees.

/12 The SSA's operating procedures similarly provide: "Obtain additional information which verifies the [payee] applicant's answer(s) to any question(s) which lead you to doubt any information furnished." POMS sec. GN 00502.107(B)(1).

/13 We note that even if the SSA knew of Strong's convictions, that would not have automatically disqualified him from serving as Gloria's representative payee. See POMS sec. GN 00502.133(A).

/14 See generally Inviting Fraud: Has the Social Security Administration Allowed Some Payees to Deceive the Elderly and Disabled? Hearings Before the Senate Special Committee on Aging, 106th Cong., 2000 WL 19303127 (2000) (Statement of James Huse, Jr., Inspector General of the SSA).