Nancy KING, Petitioner–Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security Respondent–Appellee.

No. 02–2314.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 2002.

Decided May 12, 2003.

Before COFFEY, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

## ORDER

In March 1995, petitioner-appellant Nancy King filed applications for Disability Insurance Benefits and Supplemental Security Income with the Social Security Administration ("SSA") alleging that she had been disabled since August of 1993 because of pain primarily in her lower back and legs. After the SSA denied her applications, King requested a hearing before an Administrative Law Judge ("ALJ") who subsequently found that she was not disabled within the disability regulations of the SSA because she had the functional capacity to perform her past relevant work as a medical secretary. The Appeals Council denied her request for review and the district court granted summary judgment in favor of the Commissioner, finding that substantial evidence supported the ALJ's conclusion. We affirm.

## I. BACKGROUND

### A. Testimony at the Administrative Hearing

King, who was 62–years–old at the time of the ALJ's decision, testified that she was most recently employed as a receptionist for Catholic Charities[1] from November 1993 to August 1996. The work was part-time minimum wage work involving typing, filing, and greeting visitors. The petitioner quit Catholic Charities after injuring her back while lifting some items from the floor.

Prior to working at Catholic Charities, King worked full-time as a secretary at the VA Medical Center in North Chicago from August 1987 to August 1993. The work she performed consisted of mainly data

---

1. The record does not specify the location of     Catholic Charities.

entry work, but occasionally the claimant would carry supplies and patients' charts, weighing as much as twelve pounds, between wards. King was discharged from the VA in August 1993 because of her poor work performance. Before 1987, the petitioner had worked as a secretary and a home health care provider through temporary agencies in Chicago, New Mexico, and California, but the record lacks specific dates.

King testified that she was unable to work because of the pain in her lower back and legs that resulted from sitting or standing for periods of thirty minutes or longer, with her right leg being particularly problematic. The claimant had suffered from the pain since 1992 and estimated that she was physically capable of lifting only five to ten pounds without discomfort. To relieve the pain, King would take the over-the-counter Advil drug and twenty-to-thirty minute walks, although the record fails to specify how often she took the Advil or the walks. The petitioner also claimed to suffer from fatigue, pain in her left shoulder and upper arm, and "tingling" in her left hand. According to King, sarcoidosis[2] had caused her to gain twenty pounds and the drug Prednisone, prescribed to treat the disease, made her irritable.[3] Andrew Murphy, petitioner's friend of thirty-five years, confirmed that she had recently become irritable, often appeared to be in pain, and was unable to sit still.

Christopher Yep, a vocational expert, classified the claimant's past work experience at a "light" skill level, as opposed to a "sedentary" skill level-the normal classification of a medical secretary-because King said the job required her to walk around. The vocational expert opined that if the petitioner could only stand or sit for roughly forty-five minutes at a time, then the limitations would prevent her from adequately performing a number and variety of tasks required to perform her past relevant work. However, Yep did not believe that the claimant's left arm and shoulder condition would affect her ability to perform her past job, or that her irritability precluded her from employment.

### B. Medical Evidence

The record reveals that King began to receive medical treatment with Dr. Shaku Chhabria, an independent neurologist, in November of 1992 complaining of pain in her neck and right shoulder,[4] and that the doctor opined that her symptoms likely stemmed from an underlying radiculopathy[5] for which she received heat therapy. By October 1993, Dr. Chhabria reported that the symptoms had progressed to King's left arm, but he nevertheless concluded that her condition did not prevent the petitioner from seeking sedentary work. In June 1994, the petitioner was referred to a podiatrist and subsequently diagnosed with heel spur syndrome, whose

---

**2.** A disease of unknown origin characterized by the formation of lesions composed of granulated nodules that can appear in almost any organ. *Dorland's Illustrated Medical Dictionary* 1485 (27th ed.1988).

**3.** The petitioner had stopped ingesting Prednisone roughly two months before the hearing.

**4.** There are repeated references in the Administrative Record to two distinct accidents King

allegedly had in 1992, from which her pain stems. King alleges that her shoulder and back problems began in January 1992 after she was pushed into a door. King also claims to have sustained a back injury in October 1992 when she fell off a stool while working as a secretary at the VA hospital.

**5.** "[D]isease of the nerve roots." *Dorland's, supra,* at 1404.

symptoms King attempted to minimize and control by wearing gym shoes.

In April of 1995, the petitioner saw Dr. Leone, complaining of low back pain, headaches, and shoulder pain. Dr. Leone conducted an examination documenting King's complaints and testing the range of motion in her shoulders and spine. The doctor found that she had a full range of shoulder and spinal motion and that her back pain was not related to any particular activity. At approximately the same time, Dr. Fetter, a radiologist, reviewed x-rays of the claimant's spine and discovered degenerative arthritis in her cervical spine and possible degenerative arthritis in her lumbar spine. The x-rays further revealed abnormalities in her spine's curvature, spondylosis,[6] and degenerative disc disease with narrowing of the intervertebral disc space. For treatment, Dr. Fetter recommended physical therapy and counseling regarding lower back care.

King's physical therapy began in May 1995 and her condition improved over nine sessions. In July, the claimant denied experiencing tingling, numbness, or tenderness, but continued to experience some neck pain. In September 1995, the petitioner was seen by Dr. Hammond at the Waukegan HealthReach Clinic, who prescribed her Zoloft after diagnosing her with chronic anxiety/depression.

In March 1996, King was diagnosed with sarcoidosis by Dr. Woo–Strauss, of the Evanston Hospital General Medicine Clinic ("EHGMC"), for which she was prescribed Prednisone. In August, the petitioner informed Dr. Woo–Strauss that the last two to three years had been stressful and that she had quit work after her supervisor had reprimanded her for taking too much time off. On September 10, 1996, Dr. Brown, also of the EHGMC, noted that sarcoidosis could have caused the joint pain of which the claimant complained. A bone scan in the fall of 1996 revealed arthritis in her right knee. In the spring of 1997, despite King's continued pain complaints, her physical therapist noted that she was able to tolerate her new exercises.

Finally, in October 1997, King visited a psychiatrist, Dr. Grossman, and informed the doctor that she was depressed, impatient, fatigued, forgetful, and nervous. The psychiatrist concluded that King was "mildly depressed," that her isolation since she stopped working had made her condition worse, and that she was preoccupied with her physical symptoms. For treatment, Dr. Grossman prescribed the claimant Zoloft again and recommended individual therapy.

## II. ANALYSIS

In considering the claimant's applications for Disability Insurance Benefits and Supplemental Security Income, the ALJ followed the five-step analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920:

(1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe?" (3) Does the impairment meet or exceed one of the list of specific impairments? [see 20 C.F.R. § 404, Subpt. P, App. 1] (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry

---

**6.** "[D]egenerative joint disease affecting the cervical vertebrae . . . sometimes with pain or paresthesia radiating down the arms as a result of pressure on the never roots." *Id.* at 1567.

and leads to a determination that the claimant is not disabled. *Stein v. Sullivan,* 892 F.2d 43, 44 n. 1 (7th Cir.1989); *accord Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir.2000). In step one of the aforementioned analysis, the ALJ found that King was able to engage in substantial gainful activity in 1994 because she earned $6,074.89 from Catholic Charities. Thus, the ALJ only considered the petitioner's benefit claims from 1995 forward. Although in step two the ALJ concluded that petitioner's back and right knee impairments qualified as "severe" because they significantly limited her ability to perform basic work activities, the ALJ found in step three that the claimant's condition failed to satisfy the requirements for any listed impairment. In step four, the ALJ concluded that King's impairments did not prevent her from performing the sedentary work of a medical secretary. Accordingly, the ALJ found that claimant's condition was not debilitating to such a degree to be classified as a "disability" under the Social Security Act.

We review whether the ALJ properly concluded that King could perform her past relevant work, despite her physical and mental impairments, pursuant to the standard set forth in 42 U.S.C. § 405(g): "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir.1999). "[A] mere scintilla of proof will not suffice to uphold the SSA's findings, but the standard of substantial evidence requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir.2000) (internal quotations omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but is not allowed to substitute its judgment for the ALJ's 'by reconsider-

ing facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.'" *Id.* (quoting *Williams v. Apfel,* 179 F.3d 1066, 1071–72 (7th Cir. 1999)). The ALJ has a duty to develop a full and fair record:

Our cases consistently recognize that meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence. Although a written evaluation of each piece of evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion. We have repeatedly stated that the ALJ's decision must be based upon consideration of all the relevant evidence, and that the ALJ must articulate at some minimal level his analysis of the evidence.

*Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994) (citations omitted).

The claimant attacks the ALJ's decision, in which she states that King was capable of performing her past relevant work, on numerous grounds. First, the petitioner claims that the ALJ disregarded the testimony and medical evidence in the record establishing the severity of her complaints and symptoms. In support of her argument, the petitioner states that 1) the ALJ improperly rejected evidence demonstrating that prolonged sitting causes her pain and 2) the ALJ mistakenly found that the claimant had been diagnosed with only mild to moderate degenerative arthritis of the spine even though various MRI, x-ray, and EMG evaluations demonstrated moderate to marked degenerative changes.

■ Despite King's assertions that her physical and mental impairments are severe enough to keep her from working, there is substantial evidence in the record demonstrating that the claimant's impairments do not disqualify her from perform-

ing the work of a medical secretary. In arriving at her conclusion, the ALJ pointed to the x-rays and the bone scan-which revealed only minor lumbar and right knee degeneration-as well as Dr. Brown's report stating that there was no evidence of inflamation or swelling in the joints. In the disability report that King filed with the SSA, she admitted on two separate occasions that she was capable of performing sedentary work. In addition, it is reported in the record that King had a full range of motion in her shoulders and spine. The ALJ noted that King's arthritis warranted only conservative therapy that, when followed, would provide her with relief. The drugs prescribed for the claimant's spinal condition were relatively minor, being of a non-steroidal anti-inflammatory nature. Dr. Chhabria stated that King was able to look for sedentary work, and neither Dr. Woo–Strauss nor Dr. Leone found that her impairments limited her ability to sit, despite thoroughly documenting her complaints and physical condition. Also revealing is the observation of Ms. Romero, the physical therapist, who in July 1995 rated King's back pain as a "two" (on a scale of zero to ten, with zero being no pain).

■ The petitioner's second argument, that the ALJ erred in evaluating her mental condition, is without merit. After finding King to be "mildly depressed," Dr. Grossman diagnosed her with dysthymia, a mood disorder,[7] and further noted her "preoccupation with physical symptoms." (R. at 510.) Thus, the ALJ did not err when she concluded that the claimant exhibited no "objective evidence of any significant mental dysfunction" which would qualify as a "severe impairment" under the SSA's regulations. (R. at 25.)

■ King's final assertion, that the ALJ improperly disregarded the testimony of the vocational expert, Yep, is equally devoid of merit. Yep's opinion was premised on the claimant's representations of her sitting limitations and former job duties. The ALJ discredited this testimony. When the ALJ rejects evidence "on which the vocational [expert] largely relied, the ALJ [is] also entitled to reject the [vocational expert's] findings." *Edwards v. Sullivan*, 985 F.2d 334, 339 (7th Cir.1993); *see also Ehrhart v. Secr'y of Health and Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) ("[A] vocational expert is not a required or even essential part of a disability benefits hearing. The decision whether to employ the services of a vocational expert is entirely within the discretion of the ALJ."). In fact, this Court recently rejected a challenge to an ALJ's decision based upon a petitioner's claim that the decision "does not make even a passing reference to [the vocational expert's favorable] opinion." *Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir.2002). Instead, we affirmed on the grounds that "there was still substantial evidence supporting the ALJ's decision." *Id.* Thus, because substantial evidence supports her decision, the ALJ was not bound to give reasons for rejecting the vocational expert's opinion and she committed no error in the treatment of Yep's testimony.

Essentially, the ALJ's decision amounts to a credibility determination in which the ALJ found other evidence more reliable than King's testimony. As this Court has stated on numerous occasions, we defer to the hearing judge when weighing wit-

---

7. "[A] mood disorder characterized by depressed feeling (sad, blue, low, down in the dumps) and loss of interest of pleasure in one's usual activities and in which the associated symptoms have persisted for more than two years but are not severe enough to meet the criteria for major depression." *Dorland's, supra,* at 521.

nesses' credibility "because the judge has the best opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused and nervous speech patterns in contrast with merely looking at the cold pages an appellate record." *United States v. Tolson*, 988 F.2d 1494, 1497 (7th Cir.1993) (internal quotations omitted). We are not persuaded that the ALJ erred in weighing the claimant's credibility. Based upon our review of the record, we are convinced the ALJ conducted a meaningful review of the evidence and that substantial evidence supports the ALJ's conclusion that King's physical and mental impairments were not severe enough to prevent her from performing the requirements for employment as a medical secretary.

AFFIRMED.