Diana WALKER, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.

No. 04–2495.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 2005.

Decided Feb. 3, 2005.

William E. Jenner, Jenner & Auxier, Madison, IN, for Plaintiff–Appellant.

Thomas E. Kieper, Office of the United States Attorney, Indianapolis, IN, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE, and EVANS, Circuit Judges.

## ORDER

Diana Walker was denied disability insurance benefits and supplemental security income after an Administrative Law Judge ("ALJ") concluded that her fibromyalgia and associated musculoskeletal pain did not qualify her as disabled. The Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner of Social Security. Ms. Walker then sought review in the district court, which upheld the Commissioner's decision. For the following reasons, we affirm the judgment of the district court.

Ms. Walker has struggled with pain since 1998, and in July 2001 she stopped working altogether because of difficulty standing at work and sleeping at night. During the two years before she stopped working, Ms. Walker had been employed on an assembly line for a manufacturer of hospital beds, which involved standing, kneeling and walking the entire day and required lifting up to 40 pounds at a time. Before that job, Ms. Walker had worked in other factories and as a nurse's aide. In August 2001, at the age of 34, Ms. Walker applied for benefits claiming that fibromyalgia and arthritis rendered her disabled.

The medical evidence considered by the ALJ established that Ms. Walker first complained about pain to Dr. Michael Willhite in April 1998. She reported that, for six to nine months, she had experienced neck and back pain that varied in intensity depending on her activity level. Dr. Willhite observed that Ms. Walker suffered from tenderness along her spine but ruled out neurological damage and concluded that she had full range of motion. Dr. Willhite determined that she suffered from "chronic neck and back pain" and "mixed anxiety depression," for which he instructed Ms. Walker to take a week off work and prescribed anti-inflammatory medication, a muscle relaxant and an anti-depressant. The next week, Ms. Walker returned to Dr. Willhite, and, although she had been attending physical therapy and her condition was improving, Dr. Willhite increased her anti-inflammatory medication and recommended that she take another week off of work. By mid-May 1998, Ms. Walker characterized her own condition as much improved and, though still complaining of persistent tenderness, agreed with Dr. Willhite that she could return to work.

There is no evidence of further medical care during the next two years. In August 2000, Ms. Walker complained of neck pain to Dr. Steven Vorhies, her primary care physician, and neck x-rays were ordered. The x-rays showed no abnormalities. Later that same month, Ms. Walker returned to Dr. Willhite, who noted that her complaints of neck pain were consistent with those made during her last visit in 1998. Since her earlier visits, however, Ms. Walker had gained 34 pounds (from 128 pounds to 162). She reported that her neck pain had worsened "a little bit" during the previous few months and requested that she be allowed to miss a week of work; Dr. Willhite authorized the absence but did not make any new medical recommendations and labeled her medical history "perplexing." Further x-rays taken in September 2000 did not show any significant abnormalities.

Ms. Walker returned to Dr. Vorhies for a follow-up visit in February 2001. He noted that Ms. Walker had not followed his recommendation six months earlier that she consult a rheumatologist to screen for fibromyalgia, a musculoskeletal syndrome of uncertain cause with symptoms that include widespread pain and tenderness. STEDMAN'S MEDICAL DICTIONARY 671 (27th ed.2000). Her weight at this time had climbed to 174 pounds. Dr. Vorhies found that Ms. Walker retained full range of

motion of all joints but had tenderness consistent with fibromyalgia along her back, hip and neck. Dr. Vorhies again recommended that Ms. Walker see a rheumatologist and continued her medication, but released her to return to work without restriction.

Ms. Walker consulted rheumatologist Apostolos Kalovidouris in May 2001. His records disclose that Ms. Walker's account of experiencing pain and stiffness over a three-year period, as well as her difficulty sleeping and generalized fatigue, were typical of fibromyalgia. Dr. Kalovidouris also surmised that Ms. Walker might have arthritis in her left ankle based on localized inflammation. He recommended a follow-up visit in three months, but Ms. Walker waited nearly a year and did not return until May 2002, nine months after she filed her disability claim. In the meantime she saw Dr. Vorhies in June and July 2001. Dr. Vorhies increased her medication and recommended that she reduce her stress and lose weight, alter her diet, and get more exercise and sleep. He also discussed alternative therapies. On July 23, 2001, ten days after Ms. Walker stopped going to work, she complained to Dr. Vorhies of increasing aches and pains. Dr. Vorhies noted in his records that Ms. Walker inquired about disability benefits and getting released from work, but he neither restricted nor commented on Ms. Walker's ability to work. Dr. Vorhies judged her back and neck pain to be stable, adjusted her medications, and recommended that Ms. Walker keep her next appointment with Dr. Kalvidouris.

Ms. Walker did not keep that appointment but did go to the Watson Chiropractic Clinic, which provided a letter dated August 15, 2001, that identifies neither the author or the recipient and states that Ms. Walker had been seen in the office for pain, and that "Arthritis and fibromyalgia creates a pain syndrome that makes her job duties difficult and/or impossible." On the date of this letter Ms. Walker applied for disability benefits.

In early December 2001, Ms. Walker returned to Dr. Vorhies complaining that her left shoulder " 'pops out' " at times and was causing her pain. Her weight had now climbed to 186 pounds. Dr. Vorhies observed no clinical evidence of shoulder instability. Shoulder x-rays taken the following month showed mild joint separation, but again Dr. Vorhies observed no manifestations consistent with a separation. Ms. Walker returned to Dr. Vorhies in February 2002, acknowledging that her shoulder was feeling "much, much better." Dr. Vorhies noted that she had minimal shoulder-joint tenderness and good range of motion and recommended continued exercises. At a follow-up appointment the following month, Dr. Vorhies found that Ms. Walker's left shoulder was "considerably better"; the pain was gone, and she had full range of motion. Ms. Walker's weight was now 190 pounds, up 62 pounds from 1998 when she first began complaining about pain.

After Ms. Walker applied for benefits, the Indiana Disability Determination Service retained Dr. Steven Roush and Dr. A. Dobson to review her medical records. They each performed a residual functional capacity assessment early in 2002 and agreed on the following exertional limitations: Ms. Walker can occasionally lift and carry 20 pounds, can frequently lift and carry 10 pounds, can stand and walk about 6 hours in an 8–hour workday, can sit about 6 hours in an 8–hour workday, and has unlimited ability to push and pull and thus can operate hand and foot controls. Both doctors commented that Ms. Walker's medications provided reasonable relief from pain, and concluded that she could perform work that required occasional bal-

ancing, stooping, kneeling, crouching, crawling, and walking on a ramp or stairs, but no climbing of ladders, ropes, or scaffolds. It was in this same time period, January to March 2002, that Ms. Walker's application for disability was initially rejected and again rejected upon reconsideration.

In May 2002, Ms. Walker finally had a second visit with Dr. Kalovidouris, her rheumatologist. During this visit Ms. Walker complained of pain in both ankles, more in the left than the right. Dr. Kalovidouris had a lengthy discussion with Ms. Walker about her "musculosketal complaints including fibromyalgia and polyarthritis," and altered her anti-inflammatory medication.

At the hearing before the ALJ in August 2002, Ms. Walker testified that she did not believe there was any job she could do for 40 hours a week, even if she was allowed to alternate between sitting and standing and would not be required to lift more than 10 pounds at a time. She described the intensity of her worst pain since July 2001 as an 8 on a scale of 10 (10 was to be considered excruciating pain, 7 to 9 severe pain, 4 to 6 moderate pain, and 1 to 3 mild pain) and said that the pain occurred even when she was not exerting herself. However, Ms. Walker conceded that medication did provide relief and rated the average intensity level of her pain as a 6. At the time of the hearing, Ms. Walker was continuing to take a number of pain medications, as well as medication for heartburn and depression. She testified that she performed chores such as light loads of laundry, light sweeping, light cooking, driving and grocery shopping but could not vacuum or mop. Ms. Walker testified that she could sit or stand for no more than 20 minutes before needing to change positions and estimated that the maximum weight she could lift was five pounds.

Applying the familiar five-step test outlined in Social Security Administration regulations, 20 C.F.R. §§ 404.1520(a)-(f) and 416.920(a)-(f), the ALJ concluded that Ms. Walker was not disabled. The ALJ determined that Ms. Walker had not been gainfully employed since July 2001, that she suffered from a severe impairment due to fibromyalgia which had persisted for more than 12 months, and that her impairment does not meet or equal a listed impairment because the symptoms do not satisfy the criteria of any musculoskeletal listing and because she is able to ambulate and perform fine or gross movements effectively. 20 C.F.R. § 416.920(a)(4)(i-iii). The ALJ then determined that Ms. Walker does not have the functional capacity to perform her past relevant work, 20 C.F.R. § 416.920(a)(4)(iv), but remains capable of the full range of unskilled sedentary work, 20 C.F.R. § 416.920(a)(4)(v), thus disqualifying her for disability benefits. In reaching this conclusion the ALJ found Ms. Walker credible to the extent she testified about experiencing "symptoms which make her unable to be on her feet for extended periods of time or do heavy lifting." But the ALJ found her not credible to the extent she said she was unable "to sit throughout most of a work day without frequent changes of position" or to use "her arms and hands normally for work functions."

The ALJ interpreted the opinions of Dr. Roush and Dr. Dobson to mean that Ms. Walker can perform a reduced range of "light" work activity but, based on the evidence from Ms. Walker's treating physicians and her own testimony regarding her symptoms, concluded that Ms. Walker is capable of performing only "sedentary" work. The ALJ determined that Ms. Walker's functional capacity is within the

limits outlined by Dr. Roush and Dr. Dobson, specifically finding that Ms. Walker can lift and carry ten pounds occasionally and less than ten pounds frequently, she can stand and walk up to 2 hours in an 8–hour work day and can sit without limitation. Comparing these findings to Rules 201.27 and 201.28 of the Medical–Vocational Guidelines, the ALJ determined there are a significant number of jobs that Ms. Walker is capable of performing.

We shall uphold the ALJ's decision so long as it is supported by substantial evidence in the record. *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir.2003). "Substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir.2000)).

Ms. Walker first challenges the ALJ's adverse credibility finding, arguing that it resulted from an improper analysis of her claims under Social Security Ruling 96–7p, which lays out seven factors to consider in making credibility determinations regarding an individual's self reporting of medical symptoms. Ms. Walker argues that the ALJ failed to consider the location, duration, frequency, and intensity of her pain; other factors that precipitate and aggravate the symptoms; her use of non-medicinal treatments to relieve pain; and other factors concerning Ms. Walker's functional limitations. *See* S.S.R. 96–7p (factors 2, 3, 5–7). When assessing an individual's credibility an ALJ is required to consider evidence in the record regarding the individual's daily activities as they relate to her symptoms and treatment regimen in addition to objective medical evidence, *see id.,* and provide more than mere conclusory statements regarding his credibility findings, *Brindisi ex rel. Brindisi v. Barnhart,* 315 F.3d 783, 787–88 (7th Cir.2003). Ruling 96–7p was designed to prevent ALJs from making adverse credibility determinations unsupported by substantial evidence or premised on flawed logic. *Indoranto v. Barnhart,* 374 F.3d 470, 474–75 (7th Cir. 2004). Because the ALJ has the best opportunity to judge a witness' truthfulness, his credibility determination will stand unless "'patently wrong,'" *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir.2004) (quoting *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir.2001)).

The ALJ's partial adverse credibility determination is supported by substantial evidence and properly accounts for the factors outlined in S.S.R. 96–7p. Ms. Walker argues that her credibility is supported by her doctors' willingness to continue to treat and medicate her and her chiropractor's purported support of "her allegations of pain." But Ms. Walker does not identify any evidence contemplated by S.S.R. 96–7p that the ALJ failed to consider. In determining her credibility, the ALJ relied on Ms. Walker's own testimony and the medical record to find that she experiences some relief from her symptoms because of medication and physical therapy. Ms. Walker testified that, in addition to taking her medication and visiting the chiropractor, she swims twice a week and attends physical therapy, evidencing both that she was receiving treatment other than medication—a factor contemplated under S.S.R. 96–7p—and that her level of functional limitations due to pain is low. Further, the ALJ pointed out that Ms. Walker's own treating physicians do not support her contention that her limitations would prevent her from doing sedentary work. In March 2002, well after Ms. Walker had applied for disability and just a few months before her administrative hearing, Dr. Vorhies concluded that she was well enough to return to work without restrictions. In addition, at the hearing before the ALJ, Ms. Walker described her

average pain intensity as moderate, as opposed to severe or excruciating, providing further support for the ALJ's conclusion that she did not credibly describe her functional limitations.

■ Ms. Walker also argues that the ALJ's decision is not supported by substantial evidence because her treating physicians were not asked to evaluate her residual functional capacity. But two doctors already had performed such an evaluation, and the ALJ found that, within the functional limits these doctors outlined, Ms. Walker was capable of performing sedentary work. An ALJ is required to recontact medical sources only when "the evidence received is inadequate to determine whether the claimant is disabled," *Skarbek v. Barnhart,* 390 F.3d at 504 (citing 20 C.F.R. § 404.1512(e)), and contacting her treating physicians for additional evaluations was therefore unnecessary. Furthermore, Ms. Walker does not contend that the two doctors' findings were incorrect or misleading or that the ALJ's interpretation of her abilities within those limitations was incorrect.

■ Lastly, Ms. Walker argues that the ALJ drew an improper comparison between her current daily activities and her ability to perform in a competitive work setting. This characterization of the ALJ's decision is inaccurate. The ALJ outlined Ms. Walker's daily activities only to highlight the difficulty she experiences in performing them, thus supporting the conclusion that Ms. Walker has a severe impairment.

The ALJ's decision is supported by substantial evidence. For these reasons we affirm the judgment of the district court.

AFFIRMED